*50 OPINION OF THE COURT
Hancock, Jr., J.
Under Penal Law § 240.25 (2), the use of "abusive” language with the intent to "harass” or "annoy” another person is a violation punishable by a 15-day imprisonment. Because the statute, on its face, prohibits a substantial amount of constitutionally protected expression, and because its continued existence presents a significant risk of prosecution for the mere exercise of free speech, we hold section 240.25 (2) to be invalid for overbreadth, under both the State (art I, §8) and Federal (1st & 14th Amends) Constitutions.[1] The information, to the extent that it charges defendant under that subdivision, must, therefore, be dismissed. Additionally, because the evidence presented was legally insufficient to support a conviction for a threat under Penal Law § 240.25 (1), the remainder of the information, charging defendant with violating that subdivision, must be dismissed as well.
The relevant facts are few and undisputed. Complainant and her son, both mentally retarded, were walking down a public street in the Town of Norfolk. Defendant came to her doorway with a friend and, while facing the street, referred to complainant as a "bitch” and to her son as a "dog”, and said that she would "beat the crap out of [the complainant] some day or night on the street”. With that, complainant fled in tears and reported the incident to authorities. Defendant had been aware of the complainant’s mental limitations and had, on a prior occasion, been warned by a police officer about arguing with her again.
Town Court found defendant guilty of harassment in violation of subdivisions (1) and (2) of Penal Law § 240.25[2] and *51 imposed a sentence of $50 and a surcharge or, if defendant should be unable to pay the fine, 15 days’ imprisonment. County Court affirmed and a Judge of this court granted defendant leave to appeal. With regard to her conviction under Penal Law § 240.25 (2), defendant argues, as she did in both courts below, that the subdivision is unconstitutionally overbroad because its prohibitions extend to a great deal of protected speech as well as to unprotected obscenities and "fighting words”. We agree.
To be sure, calling another a "bitch” or a "dog” — the conduct allegedly constituting the violation of section 240.25 (2) here — is "abusive” in the ordinary sense of that term. The common dictionary definition of "abusive”, as "coarse”, "insulting” and "harsh”,[3] certainly applies to defendant’s name-calling. Moreover, the evidence that defendant was aware of the complainant’s disability, that she had previously been admonished by a police officer, and that her name-calling was unprovoked was sufficient to support a finding that defendant had the requisite intent to "harass” or "annoy” the complainant (compare, People v Bacon, 37 NY2d 830; People v Pecorella, 32 NY2d 920). Hence, there being no indication in the statute that some other, special meaning was intended for "abusive” language or intent to "harass” or "annoy”, defendant’s words to complainant and her son clearly fall within the facial scope of the statute.
Defendant’s words do not, however, fall within the scope of constitutionally prescribable expression, which is considerably narrower than that of the statute. Speech is often "abusive”— even vulgar, derisive, and provocative — and yet it is still protected under the State and Federal constitutional guarantees of free expression unless it is much more than that (see, Lewis v City of New Orleans, 415 US 130, 133-134; cf., Steinhilber v Alphonse, 68 NY2d 283). Casual conversation may well be "abusive” and intended to "annoy”; so, too, may be light-hearted banter or the earnest expression of personal opinion or emotion. But unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized (Terminiello v Chicago, 337 *52 US 1, 4-5; see also, City of Houston v Hill, 482 US 451, 461-462; People v Feiner, 300 NY 391, 402, affd 340 US 315).
At the least, any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace (see, Lewis v City of New Orleans, supra, at 133; Gooding v Wilson, 405 US 518, 525; People v Feiner, supra, at 401; People v Tylkoff, 212 NY 197, 200; cf., People v Harvey, 307 NY 588, 592). The Supreme Court has oft reaffirmed the power of States to prohibit public speech which creates an imminent danger of violence (see, e.g., City of Houston v Hill, supra, at 461-462; Gooding v Wilson, supra, at 523; Cohen v California, 403 US 15, 20), and this court has, in the past, found no constitutional infirmity in a conviction for verbally inciting a riot in disregard of police orders to desist (see, People v Feiner, supra). But the proscription of Penal Law § 240.25 (2) is not limited to such "fighting words” (see, Chaplinsky v New Hampshire, 315 US 568). Instead, it extends to any "abusive” language intended to "annoy”, and no fair reading of the statute’s unqualified terms supports or even suggests the constitutionally necessary limitations on its scope.
Moreover, we decline to incorporate such limitations into the statute by judicial construction. While it is argued that the statute’s unconstitutional overbreadth might be cured by restricting its reach to "fighting words” or other words which, by themselves, inflict substantial personal injury, such a "cure” would, indeed, be fraught with significant problems of its own. First, although, to be sure, a statute ought normally to be saved by construing it in accord with constitutional requirements (see, e.g., People v Liberta, 64 NY2d 152, 171; People v Barber, 289 NY 378, 385), it is basic that the very language of the statute must be fairly susceptible of such an interpretation; put otherwise, the saving construction must be one which the court "may reasonably find implicit” in the words used by the Legislature (People ex rel. Morriale v Branham, 291 NY 312, 317; see also, People v Finkelstein, 9 NY2d 342, 345; People ex rel. Simpson v Wells, 181 NY 252, 257; Wong Yang Sung v McGrath, 339 US 33, 50; Japanese Immigrant Case [Yamataya v Fisher], 189 US 86, 101; cf., Lanzetta v New Jersey, 306 US 451, 457). Here, the language of section 240.25 (2) — i.e., "abusive or obscene language” and "intent to harass [or] annoy” — simply does not even suggest a limitation to violence-provoking or substantial injury-inflicting *53 utterances. An attempt by this court to so limit the statute would, thus, be tantamount to wholesale revision of the Legislature’s enactment, rather than prudent judicial construction (see, Scales v United States, 367 US 203, 211).
Second, and equally critical to our decision, construing the statute as limited to certain constitutionally proscribable speech would likely result in transforming an otherwise over-broad statute into an impermissibly vague one; the statutory language would signify one thing but, as a matter of judicial decision, would stand for something entirely different. Under those circumstances, persons of ordinary intelligence reading section 240.25 (2) could not know what it actually meant (see, People v Bright, 71 NY2d 376, 382; People v Hardy, 47 NY2d 500, 501; Robe v Washington, 405 US 313, 315). Such a deficiency is especially intolerable in a statute regulating speech. It chills the expressive freedom of those who believe the statute means what it says and, thus, are reluctant to disobey its literal command; and it subjects individuals to arrest and prosecution, even if ultimately unsuccessful, by officials strictly enforcing the statute’s prohibitions (see, Baggett v Bullitt, 377 US 360, 374; N A. A. C. P. v Button, 371 US 415, 432-433; Winters v New York, 333 US 507, 515). In short, judicial construction might remedy the overbreadth of this statute, but only at the expense of rendering it unacceptably vague (see, Aptheker v Secretary of State, 378 US 500, 515-516; cf., Tribe, American Constitutional Law § 12-29 [2d ed]).
Indeed, this court’s past decisions under section 240.25 (2), overturning convictions for mere vulgar speech on the ground that such expression did not come within the meaning of the statute (see, e.g., People v Carvelas, 35 NY2d 803; People v Collins, 31 NY2d 878; People v Shaheen, 32 NY2d 675), have not succeeded in halting the prosecution thereunder of protected expression. Consequently, in addition to reversing defendant’s conviction for "abusive” language under section 240.25 (2), it is now imperative that we reach the constitutional issue and, for all the reasons previously discussed, hold it invalid.
Defendant’s conviction under section 240.25 (1) must also be reversed. There is nothing in the record demonstrating that defendant’s statement that she would "beat the crap out of-[complainant] some day or night in the street” was either serious, should reasonably have been taken to be serious, or *54 was confirmed by other words or acts showing that it was anything more than a crude outburst. While genuine threats of physical harm fall within the scope of the statute, such an outburst, without more, does not (see, People v Todaro, 26 NY2d 325, 330; see also, Watts v United States, 394 US 705, 708).
Accordingly, the order of County Court should be reversed, and the information dismissed.

. The New York Constitution provides an independent basis for our holding; we have little doubt, however, that Penal Law § 240.25 (2) runs afoul of the Federal Constitution as well.

. Penal Law § 240.25 provides in pertinent part:
"A person is guilty of harassment when, with intent to harass, annoy or alarm another person: *51 "1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or
"2. In a public place, he uses abusive or obscene language, or makes an obscene gesture” (emphasis added).

. See, e.g., Webster’s New Twentieth Century Dictionary of the English Language Unabridged, Second Edition.