OPINION OF THE COURT
Lee Cross, J.
In Hogan, the defendant is charged with one count of Penal Law § 215.50 (3), criminal contempt in the second degree, one count of Penal Law § 240.26 (3), harassment in the second degree, and one count of Penal Law § 260.10 (1), endangering the welfare of a child. Defendant moves to dismiss the accusatory instrument arguing that it is facially insufficient. The motion is granted for the reasons set forth below.
In Anonymous, the defendant was charged with one count of Penal Law § 240.26 (3), harassment in the second degree. The defendant moved orally to dismiss the accusatory instrument on the grounds of facial insufficiency. The motion was granted for the reasons set forth below.
These two cases are part of a growing trend of charging "domestic violence” defendants with harassment for "verbal abuse”. If there is an extant order of protection, a count of criminal contempt is thrown in. If children were present at the time of the "verbal abuse”, endangering the welfare of the children is also alleged. Bail is often set upon defendants, particularly if a violation of an order of protection is alleged. This court has encountered numerous cases involving these charges, but most never make it to the stage of a court decision, since adjournments in contemplation of dismissal with an order of protection are generally offered and often accepted, or corroborating affidavits are not filed and defense counsel does not want to waive speedy trial time by filing a motion to dismiss. These two cases are, however, typical of a growing trend.
In Hogan, the accusatory instrument reads, in pertinent part, as follows:
"The deponent is informed by Gina Moffett, that at the above time and place [January 10, 1997, at 1 am, inside of 440 Bergen Street], the defendant did engage in a verbal dispute with informant and did call informant a fucking bitch and a whore. Deponent is further informed by informant that when infor *281 mant left the above location to prevent further confrontation with defendant, defendant did follow informant and try to continue the verbal dispute, causing informant to become seriously alarmed and serving no legitimate purpose.
"Deponent is further informed by informant that a limited order of protection was issued by Judge Cross on November 6, 1996, effective until November 5,1997 on docket No. 96K073170 ordering defendant to refrain from assault, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or any criminal offense against informant. Deponent is further informed by informant that defendant signed said order of protection in court on November 6, 1996.
"Deponent is further informed by informant that informant’s three year old child, Shakeira Hogan (DOB: 4/6/93), was present during the above incident.”
A corroborating affidavit of Gina Moffett and a copy of the signed limited order of protection issued when the previous case was adjourned in contemplation of dismissal were served and filed.
In Anonymous, the accusatory instrument reads, in pertinent part, as follows: "The deponent is informed by Ramona Martinez that, at the above time and place [February 19, 1997 at 2:15pm at 451 Carroll Street], the defendant did curse at informant and did scream at informant causing informant to become alarmed and seriously annoyed.”
A corroborating affidavit of Ramona Martinez was served and filed.
An information is facially sufficient if (a) the factual part of the information provides reasonable cause to believe that the defendant committed the offenses charged in the accusatory part of the information and (b) nonhearsay allegations of the factual part establish, if true, every element of the offenses charged and the defendant’s commission thereof. (CPL 100.40; People v Alejandro, 70 NY2d 133 [1987].)
Harassment in the Second Degree
It is important to begin with what these cases do not involve. They do not involve any threats of physical violence or harm. The defendants are not charged with violating subdivision (1) of harassment in the second degree (Penal Law § 240.26), threatening to subject another to physical contact. While People v Dietze (75 NY2d 47 [1989]) characterizes a statement by the defendant that she would " 'beat the crap out of *282 [complainant] some day or night in the street’ ” as not a threat, but merely a protected "crude outburst” (supra, at 53, 54), virtually any threat of physical violence after the issuance of an order of protection must be taken seriously. But there are no such threats in either of these cases, either express or implied. The defendants are charged with violating subdivision (3) of Penal Law § 240.26, harassment in the second degree: engaging in a course of conduct or repeatedly committing acts which alarm or seriously annoy another and which serve no legitimate purpose. This reliance on subdivision (3) is misplaced for two reasons. Neither case alleges a course of conduct or repeated acts and there is no evidence that the verbal dispute being engaged in served no legitimate purpose. Finally, if the conduct alleged did fit within the parameters of the statute, it would run afoul of the First Amendment, just as the statements in Dietze did.
The Court of Appeals has repeatedly held that to establish that the defendant " 'engage[d] in a course of conduct or repeatedly committed] acts which alarm[ed] or seriously annoy[ed]’ another person”, there must be evidence that the defendant’s conduct was not an "isolated incident”. (People v Wood, 59 NY2d 811, 812 [1983]; People v Valerio, 60 NY2d 669 [1983]; People v Chasserot, 30 NY2d 898 [1972]; and see, People v Malausky, 127 Misc 2d 84 [Rochester City Ct 1985]; People v Hotchkiss, 59 Misc 2d 823 [Schuyler County Ct 1969].) In both of the cases which are the subject of this decision, there is only an isolated incident alleged, rather than a course of conduct or repeated acts.
In People v Tralli (88 Misc 2d 117 [App Term, 2d Dept 1976]), the Appellate Term, in a two-to-one decision, affirmed a Nassau County harassment conviction under the predecessor statute wherein the defendant was called to the victim’s house to repair a piece of furniture. He asked the victim to come into the den and conversed with her. He then asked her to inspect the repair work and maneuvered her into a position whereby she could readily see that he was exposing himself. The court found that the defendant had engaged in a course of conduct since his actions were calculated and deliberate rather than a spontaneous emotional verbal outburst. The court thus held that a one-time deliberate act could constitute a "course of conduct”. On reading the decision, however, one is left with the disquieting feeling that it was motivated in part by the fact that the defendant’s conduct would go entirely unpunished were it not for that interpretation of the harassment statute, *283 since the exposure did not occur in public. In any event, in the 20 years since the Tralli decision, it has been cited only twice, in Criminal Court decisions, both involving charges of menacing in the second degree, not harassment in the second degree and both with much greater evidence of a course of conduct than the instant cases. (People v Murray, 167 Misc 2d 857 [Crim Ct, NY County 1995]; People v Payton, 161 Misc 2d 170 [Crim Ct, Kings County 1994].) In both of the instant cases, the conduct amounts to no more than an emotional outburst of short duration. In both cases there was an argument with some "swear” words — hardly a course of conduct. In Hogan, the fact that the defendant followed the complainant out the door of the apartment during the argument does not turn a single event into a course of conduct. (People v Sullivan, NYLJ, Mar. 12, 1997, at 29, col 5 [App Term, 2d Dept].)
The accusatory instruments in the instant cases also fail to allege facts showing that the verbal disputes in these cases had no legitimate purpose. While at first blush it is difficult to ascribe any legitimate purpose to the use of a swear word, the phrase "no legitimate purpose” cannot be so broadly construed. The registering of displeasure with another person is legitimate, protected speech. Indeed, many people seem hardly able to speak an English sentence without the use of at least one four-letter word. In People v Zullo (170 Misc 2d 200 [Nassau Dist Ct 1996]), a defendant was prosecuted for calling her ex-husband about his remitting a support payment check in less than the full amount and for using various choice swear words to describe what she thought of the situation. In dismissing the accusatory instrument, the court said "The mere fact the defendant in anger or frustration uses colorful language in registering her displeasure with actions of the complainant does not render the communication criminal within the ambit of the Penal Law.” (Supra, at 202; and see, People v Caine, 70 Misc 2d 178 [Suffolk Dist Ct 1972].) Indeed, in the cases under consideration, the accusatory instruments do not even spell out what the arguments were about, so it is impossible to know if the defendants in these cases were merely using "colorful language” to express their points of view or were truly speaking "with no legitimate purpose”. In the absence of factual allegations as to the context in which the offensive language was *284 used, it is impossible to infer that there was no legitimate purpose to the language used.[1]
Finally, if words that are spoken by one person to another on one occasion are ever found to fall within the ambit of the third subdivision of harassment in the second degree (Penal Law § 240.26 [3]), the statute would doubtless run afoul of the First Amendment as did the language in Dietze (supra). In Dietze, the Court said: "Speech is often 'abusive’^even vulgar, derisive and provocative — and yet it is still protected under the State and Federal constitutional guarantees of free expression unless it is much more than that * * * Casual conversation may well be 'abusive’ and intended to 'annoy’; so, too, may be light-hearted banter or the earnest expression of personal opinion or emotion. But unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized”. (People v Dietze, supra, 75 NY2d, at 51.)
If calling the complainant a "bitch” in Dietze (supra) runs afoul of the First Amendment, here calling the complainant a "fucking bitch and a whore” also does so. (People v Sullivan, supra.) While the defendants’ conduct in these cases was abusive and cruel, it was not criminal.
Endangering the Welfare of a Child
The People concede that this count of the accusatory instrument in Hogan must be dismissed as insufficient.
Criminal Contempt in the Second Degree
The People argue in Hogan that since the count of harassment in the second degree is made out, the contempt charge is also sufficiently alleged. As noted above, however, the count of harassment in the second degree is not made out. An argument could be made that the word "harassment” in the order of protection covers more conduct than that which is forbidden by the harassment statute. Clearly an order of protection can forbid the defendant from engaging in conduct which would not be criminal but for the order of protection. For example, an order of protection may forbid a defendant from going near the complainant, which conduct would not be criminal except as a violation of the court’s order. (People v Ragsdale, NYLJ, Nov. 5, 1993, at 22, col 5 [Crim Ct, NY County].)
*285 The problem with construing the word harassment in a limited order of protection as covering conduct which is not a violation of the Penal Law is that the defendant is not given any notice of what conduct is forbidden. To make out a charge of contempt, the People must allege facts showing an intentional violation of an unequivocal mandate of the court. (Matter of Holtzman v Beatty, 97 AD2d 79 [2d Dept 1983].) "Where the terms of an order are vague and indefinite as to whether or not particular action by a party is required, then, of course, he may not be adjudged in criminal contempt for the willful failure to take such action.” (Supra, at 82.) In People v Forman (145 Misc 2d 115 [Crim Ct, NY County 1989]), the defendant was charged with violating an order of protection which ordered him to abstain from "offensive conduct” against the complainant. It was alleged that the defendant had threatened his estranged wife with violence over the telephone. The court dismissed the contempt charge finding that the order allegedly violated was totally lacking in specificity. Clearly, if an order prohibiting the defendant from harassing the complainant is read to order him not to engage in the Penal Law violation of harassment against the complainant, there is sufficient specificity to hold him to account. But, if the conduct engaged in does not amount to the Penal Law violation of harassment, how can the defendant know that his conduct is forbidden?
If a court wants to prohibit a defendant from using swear words when arguing with his spouse, it may explicitly forbid such conduct in the order of protection. If a court wants to forbid the defendant from raising his voice when arguing with his spouse, it can specify the permissible decibel level in the order of protection. It is suggested, however, that these would be foolish attempts to regulate the minutiae of a personal relationship. When a couple has decided to continue to live together or to see each other, a court can legitimately order one or both of them, against whom criminal charges are pending, not to commit any offenses against the other, on pain of immediate arrest and a criminal charge for violating an order of protection. It is unrealistic, however, for a court to become involved in trying to regulate the words the couple uses in speaking to each other and the noise level of their discussions. The Penal Law is a bludgeon used to force a bare minimum level of civility on miscreants. It is not a book of etiquette. And were such an order of protection issued only to one party, the couple could have an argument where one person could hurl invective at the other with impunity, but cause the arrest of *286 the other if the invective were met in kind.[2] But, even if an order of protection could permissibly have been drafted to cover Mr. Hogan’s calling his spouse a "fucking bitch and a whore”, the order of protection which he was issued did not do so. The contempt charge thus cannot be made out since the conduct alleged was not in violation of a specific order of the court.
[Portions of opinion omitted for purposes of publication.]

. Virtually all speech, other than threats or incitements to crime, has a constitutionally protected purpose — conveying the speaker’s point of view. The fact that the listener is annoyed by what is said does not detract from the legitimate purpose of conveying the thoughts.

. It is also counterproductive fqr the People to try to encompass too many minutiae in an order of protection. Many cases are resolved upon the People’s offer of an adjournment in contemplation of dismissal and a limited order of protection. If living up to such an order becomes unduly onerous, defendants will understandably refuse to accept such offers. Many of the cases presently so resolved would end up dismissed for want of cooperation of the complainant.