OPINION OF THE COURT
 

 Bellacosa, J.
 

 On this appeal, defendant challenges his affirmed conviction and the constitutionality of New York’s disorderly conduct statute (Penal Law § 240.20 [3]) under the State and Federal Constitutions. This case arises out of an incident that occurred in September 1993 in front of and then inside a bar in downtown Saratoga Springs.
 

 The evidence, viewed in the light most favorable to the People as we must in the procedural posture of this affirmed
 
 *772
 
 conviction, is as follows: A police officer walking a street beat observed Tichenor standing outside the bar just after midnight. As the officer passed by the bar, Tichenor uttered an obscenity at the officer; he also spat on the ground towards the officer’s feet. The officer, who was about eight feet from Tichenor, turned and moved towards the individual. Tichenor then proceeded to shove the officer while uttering further obscenities. The officer testified that he did not observe anyone else on the street at that point in time.
 

 Following this physical confrontation, the officer decided to arrest Tichenor and moved towards him, but Tichenor then attempted to reenter the bar. The officer put his hand on Tichenor’s elbow and said, "Sir, step out here.” Tichenor initially complied. While still holding onto Tichenor with his left hand, the officer reached for his handcuffs with his right hand. As this was occurring, a group of people gathered in the doorway of the bar, with some screaming "Leave him alone,” adding various epithets. The patrol officer then radioed for assistance. Tichenor pulled away from the officer’s grasp and moved into the bar. The officer followed him inside, and when he caught up with Tichenor and attempted to arrest him, a scuffle ensued with bar patrons joining the fray. The police who responded to the officer’s call testified that when they reached the bar, Tichenor and a number of other people were on top of the patrol officer, who was on the floor. Eventually, the officers sorted out the melee, handcuffed Tichenor and placed him under arrest.
 

 Tichenor was charged with disorderly conduct (Penal Law § 240.20), harassment in the second degree (Penal Law § 240.26) and resisting arrest (Penal Law § 205.30). Following a jury trial in the Saratoga Springs City Court, he was convicted of disorderly conduct and resisting arrest and acquitted on the harassment charge. On his appeal to County Court, the conviction was affirmed. The intermediate appellate court found sufficient evidence to support the verdict and judgment and rejected Tichenor’s argument that the disorderly conduct statute was unconstitutional. A Judge of this Court granted defendant leave to appeal. We now affirm the order upholding the conviction and hold that the disorderly conduct statute is constitutional.
 

 Appellant argues that Penal Law § 240.20 (3) offends constitutional safeguards implicating free speech, vagueness and overbreadth under both the State and Federal Constitutions (NY Const, art I, § 8; US Const 1st, 14th Amends). He
 
 *773
 
 particularly asserts that
 
 People v Dietze
 
 (75 NY2d 47) compels a ruling in his favor. Defendant’s various arguments are unavailing.
 

 The challenged provision of the disorderly conduct statute provides in pertinent part:
 

 "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: * * *
 

 "3. In a public place, he uses abusive or obscene language, or makes an obscene gesture” (Penal Law § 240.20 [3]).
 

 In
 
 People v Dietze
 
 (75 NY2d 47,
 
 supra),
 
 this Court held unconstitutional the former harassment statute, which provided in its pertinent part:
 

 "A person is guilty of harassment when, with intent to harass, annoy or alarm another person: * * *
 

 "2. In a public place, he uses abusive or obscene language, or makes an obscene gesture” (Penal Law former § 240.25 [2] [repealed]).
 

 Defendant focuses principally upon
 
 Dietze
 
 to argue that the disorderly conduct statute is similarly infirm because the Legislature employed a parallel phrase. The analogy collapses, however, because of the critical differences in purpose, interpretation and application of these quite different penal provisions. The different treatment and result are amply supported by careful analysis and under precedents from this Court and the United States Supreme Court.
 

 As a threshold matter, a party seeking to nullify a statute as unconstitutional must overcome the presumption of constitutionality that favors legislative enactments
 
 (People v Demperio,
 
 86 NY2d 549, 550;
 
 People v Scalza,
 
 76 NY2d 604, 607;
 
 Matter of Van Berkel v Power,
 
 16 NY2d 37, 40). Simply stated, "the invalidity of the law must be demonstrated beyond a reasonable doubt”
 
 (People v Pagnotta,
 
 25 NY2d 333, 337;
 
 see, New York v Ferber,
 
 458 US 747, 769). Defendant fails to meet even this initial burden.
 

 In
 
 People v Munafo
 
 (50 NY2d 326), this Court stated that "[disorderly conduct is a statutory creation. Intended to include in the main various forms of misconduct which at common law would often be prosecuted as
 
 public
 
 nuisances * * *.
 
 *774
 
 [A] common thread that ran through almost all of this legislation was a desire to deter
 
 breaches of the peace
 
 or, more specifically, of the
 
 community’s
 
 safety, health or morals. * * * And, although it has always been difficult to essay any precise definition of 'breach of the peace’ * * *, this court has equated that term with
 
 'public inconvenience, annoyance or alarm’,
 
 the governing phrase of our current disorderly conduct statute”
 
 (id.,
 
 at 330-331 [citations omitted; emphasis added]). Before that, we upheld the constitutionality of the predecessor, similarly worded disorderly conduct statute
 
 (People v Feiner,
 
 300 NY 391,
 
 affd
 
 340 US 315). There, defendant was convicted of disorderly conduct as a result of delivering a provocative speech from a sidewalk soapbox to a crowd that spilled out into the street, blocking traffic (id., at 395-396). As the crowd became unruly, the police asked the defendant to desist, and when he refused and persisted in his declamations, he was arrested
 
 (id.,
 
 at 397). Defendant then challenged the conviction on the grounds that the statute violated his State and Federal constitutional free speech rights
 
 (id.,
 
 at 399).
 

 In upholding the constitutionality of the former disorderly conduct statute there, this Court noted that "[w]here both the audience and the speaker are inevitably proceeding toward an eruption of civil strife * * * the power and duty of the State to punish the speaker who refuses to desist after appropriate warning is clear”
 
 (People v Feiner,
 
 300 NY 391, 400,
 
 supra).
 
 The United States Supreme Court affirmed this Court’s decision
 
 (Feiner v New York,
 
 340 US 315,
 
 supra),
 
 noting that the defendant was "neither arrested nor convicted for the making or the content of his speech. Rather, it was the reaction which it actually engendered”
 
 (id.,
 
 at 319-320;
 
 see, Cantwell v Connecticut,
 
 310 US 296, 308). That aspect has particular resonance and applicability to the instant case scenario. This Court, moreover, has steadfastly upheld the constitutionality of New York’s disorderly conduct statutes
 
 (People v Todaro,
 
 26 NY2d 325, 329;
 
 People v Thomas,
 
 23 NY2d 659,
 
 remittitur amended
 
 23 NY2d 805;
 
 People v Turner,
 
 17 NY2d 829).
 

 Appellant would have us ignore or overrule the potent stare decisis effect of these four-square precedents. In addition, he tries to shift the analytical path to
 
 People v Dietze
 
 (75 NY2d 47,
 
 supra)
 
 and
 
 Chaplinsky v New Hampshire
 
 (315 US 568) and away from the solid array of decisions directly on point with respect to disorderly conduct. He argues that the disorderly conduct statute under which he stands convicted prohibits protected expression in violation of Dietze’s dictate. Defendant’s
 
 *775
 
 reliance is entirely misplaced as the disorderly conduct statute as interpreted by this Court does not raise the subjective speech concerns, implicated under the former harassment statute ruled upon in
 
 Dietze.
 
 In
 
 Dietze,
 
 we stated that "unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized” (75 NY2d, at 51,
 
 supra).
 
 The case, to be sure, struck down that harassment statute as unconstitutional because it prohibited speech solely upon the basis that it was abusive and individually targeted
 
 (id.).
 
 But the breadth of the quoted statement does not control or inform the analysis to dispose of the instant case.
 

 On the other hand, the disorderly conduct statute at the heart of this case is different in purpose, language, scope and operation. Significantly, the disorderly conduct statute challenged here applies to words and conduct reinforced by a culpable mental state to create a public disturbance. The harassment statute at issue in
 
 Dietze
 
 proscribed abusive or obscene face-to-face communication directed at individuals and was held unconstitutional because it infringed upon speech beyond the "fighting words” which government is still permitted to constitutionally regulate
 
 (People v Dietze,
 
 75 NY2d 47, 52,
 
 supra; see, Chaplinsky v New Hampshire,
 
 315 US 568, 572,
 
 supra; Gooding v Wilson,
 
 405 US 518, 525-526). The disorderly conduct statute at issue here does not circumscribe pure speech directed at an individual
 
 (contrast, Houston v Hill,
 
 482 US 451, 455;
 
 Gooding v Wilson,
 
 405 US 518, 519,
 
 supra).
 
 Rather, it is directed at words and utterances coupled with an intent to create a risk of public disorder, which the State has the authority and responsibility to prohibit, prevent and punish
 
 (see, Feiner v New York,
 
 340 US 315,
 
 supra; People v Dietze,
 
 75 NY2d 47, 52,
 
 supra).
 
 This statute is not overbroad on its face or in its particular application; instead, it is quite specifically and justifiably targeted.
 

 Appellant’s further argument that the disorderly conduct statute is void for vagueness is also unsustainable as this Court has "upheld such statutes against a vagueness challenge many times”
 
 (People v Hardy,
 
 47 NY2d 500, 505, citing
 
 People v Todaro,
 
 26 NY2d 325,
 
 supra; People v Thomas,
 
 23 NY2d 659,
 
 supra; People v Turner,
 
 17 NY2d 829,
 
 supra; People v Feiner,
 
 300 NY 391,
 
 supra).
 
 This is so because the statute, first, "provide[s] sufficient notice of what conduct is prohibited; second, the statute [is not] written in such a manner as to permit or encourage arbitrary and discriminatory enforce
 
 *776
 
 ment”
 
 (People v Bright,
 
 71 NY2d 376, 382). The statutory requirement that the defendant possess an intent "to cause, or recklessly create a risk of, public inconvenience, annoyance or alarm, narrows the definition, so that no inadvertent * * * act may be punished”
 
 (People v Bakolas,
 
 59 NY2d 51, 54;
 
 contrast, People v Dietze,
 
 75 NY2d 47, 52,
 
 supra).
 
 Further, "the objective standard of public disturbance, * * * and the narrowing effect of the fact that all of the other acts proscribed by the section are publicly offensive, permit, if they do not require” the conclusion that the statute is sufficiently definite (59 NY2d, at 54,
 
 supra).
 
 Thus, " 'citizens who desire to obey the statute will have no difficulty in understanding it’ ”
 
 (Colten v Kentucky,
 
 407 US 104, 110, quoting
 
 Colten v Commonwealth,
 
 467 SW2d 374, 378).
 

 Defendant, again resorting to
 
 Dietze,
 
 argues that the statute is unconstitutional as applied to the facts of this case because his confrontation with the officer was not public, but instead constituted merely a private encounter. Based upon this theory, defendant further asserts that there is insufficient evidence to satisfy the elements of the crime. Defendant’s arguments are both unpersuasive and unsupported.
 

 Disorderly conduct occurs when a person, with intent to cause a public annoyance or alarm in a public place, uses abusive or obscene language (Penal Law § 240.20 [3]). Defendant contends that he was convicted solely on the basis of his private, tete-a-tete with the officer — albeit on a public street— because the arresting officer testified that he initially observed no other persons when the obscene statements were uttered
 
 (see, Houston v Hill,
 
 482 US 451, 461,
 
 supra).
 
 This frozen frame does not capture or convey fully what happened here in this barroom-sidewalk-type occurrence. The jury had plenty of evidence to weigh the whole incident — all the connected frames— and to conclude that defendant intended to cause and incite a public disturbance. Although the arresting officer testified that he did not initially observe any other persons outside the bar, he also indicated that because of the way he was turned facing the defendant, he was unable to see whether any of the patrons inside the bar or the doorway of the bar observed the opening provocative salvos. The officer further testified that immediately following the first face-off with defendant, a goodly number of curious or aroused bar patrons gathered in the doorway, necessitating the officer’s call for backup aid. From all this evidence, the jury could reasonably infer that the defendant instigated the confrontation, intending to create a
 
 *777
 
 public contretemps with the potentiality of a public escalation, and was, therefore, well within the penal statute’s prohibition. The fact that the defendant slipped away from the officer’s grasp and reentered the bar after the street confrontation further supports a ready inference that the defendant intended to cause a "public inconvenience, annoyance or alarm.”
 

 Based on all the evidence of conduct, words, intent and public flare-up in the bar and on the street, a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial” are unassailably present in this case and on this record
 
 (People v Bleakley,
 
 69 NY2d 490, 495).
 

 Our disposition of the issues presented renders unnecessary any further explication on defendant’s other arguments, which are without merit.
 

 Accordingly, the order of the County Court should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed.