OPINION OF THE COURT
John J. Kelley, J.
Lisa T. (mother) and her ex-husband K.T. (father) have one child in common. Sadly, for nearly all of the child’s young life, the parties have been embroiled in a multitude of bitter legal disputes: first in New Jersey, and now in New York. In fact, in New York alone, the parties have filed 24 family offense, custody, and violation petitions since December 2012. Because proven acts of domestic violence must be factored into any custody or visitation determination (Domestic Relations Law § 240 [1]), the court has bifurcated the proceedings to try the family offense and order of protection violations first.
*849 The mother initially filed a December 10, 2012 family offense petition, alleging that on December 7, 2012, the father repeatedly “threaten[ed]” her by email, that he “harass[ed]” her with text messages, and that he “harass[ed]” her coworkers at work.[1] On February 19, 2013 and April 21, 2014, the mother filed two separate violation petitions, each alleging that the father contacted her in violation of a temporary order of protection. On February 13, 2015, she filed a violation petition, which consolidated the allegations of her first two petitions with new allegations of a violation.
The court takes judicial notice of the following matters from its file:
• December 10, 2012: The mother filed a petition and obtained an ex parte temporary order of protection (TOP) from Referee Jennifer Burtt. The TOP directed the father to
“[r]efrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with [the mother] . . . Respondent is not to call Petitioner at work at all . . . Respondent may contact Petitioner (other than at work) in the event of an emergency regarding the child or visitation arrangements,” and to refrain from committing a family offense against her.
• Both parties appeared before Referee Jeannette Madrid on February 6, 2013. Issue was joined and the TOP was extended. Although the court notes indicate that the TOP was modified, it appears to be identical in substance to the December 10 TOP. The father was served in court.
• The parties both appeared before Judge Paul Goetz on April 8, 2013, July 8, 2013, and October 3, 2013. Each time, the TOP was extended, and the father was served in court. The October 3, 2013 TOP, which the court served on the father, contained the following bold-faced language:
*850 “NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL ANEW DATE SET BY THE COURT.”
• The October TOP also contained the following language: “It is further ordered that this temporary order of protection shall remain in force until and including November 20, 2013, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.”
• The father did not appear on November 20, 2013. The TOP was extended to February 5, 2014. It indicated that the father was served by “other” means. The mother and her attorney maintained that attorney Veronica Mandel appeared on the father’s behalf and was aware of the TOP’S extension. Although the father did not appear to take issue with the assertion that Ms. Mandel may have been present, the court file is unclear as to when exactly Ms. Mandel appeared or was assigned. Because of this incomplete record, the court cannot find by clear and convincing evidence that an attorney appeared for the father on November 20, 2013.
• The parties later appeared before Referee Ronald Cohen on April 3, 2014. The TOP was extended to June 5, 2014, and the father was served in court.
Based upon the evidence that this court deems credible, the court finds the following facts to be true:
The Family Offense
As referenced above, the parties were embroiled in a custody proceeding in New Jersey. In connection with that proceeding, Judge Cathy Wasserman issued an order that provided for the *851 child to have parenting time with the father in New Jersey Monday through Wednesday, and the remainder of the week with the mother in New York. On December 5, 2012, the father appeared in New Jersey with an ex parte order to show cause before Judge Miguel de la Carrera, who presided over the matter because Judge Wasserman was not available. Without notice to the mother, Judge de la Carrera signed an order directing that the mother surrender custody of the child to the father within 24 hours. The father served the mother with a copy of the order the next day, December 6, 2012.
The December 7, 2012 emails in question were received into evidence without objection. On December 7, 2012, the mother was employed as a paraprofessional with the New York City Department of Education. On that day, the father and the mother became involved in an exchange of communications concerning the child. As part of the exchange, the father sent approximately five emails to the mother’s personal email account. The emails began by asking the mother when she and the child would arrive in New Jersey. After receiving an apparently unsatisfactory response, the father continued as follows:
“I called U 3 times n u didn’t answer. I am not doing the email
‘You just said u can’t deal with me that’s because I stopped letting you abuse me and walk all over me. I began to stand up for myself and I guess u couldn’t handle that.”
At one point, the father asked the mother to repeat something she had said over the phone that he could not hear. The mother responded that the child was “crying for his mother.” The father responded as follows:
“Omg stop it cause he do the same thing with me what is wrong with you. He gonna do the same thing when he go to school he do it when I leave him with my mother or father. He did it thanksgiving oh wait no he was fine.
“You didn’t care that u kept him away frn me for over a week cause u mad. U need to stop for real and usaid I lied what did I lie about cause I didn’t lie. I said the truth. Good bye.
“I see u want to play games I sent u messages ur neglecting [our son].
“U don’t let me speak to the child or hear his voice u do nothing but damage and destroy. U hurt only *852 him. U don’t understand all us care about is urself. U better bring him to Jersey like u been ordered to.”
By enacting Family Court Act article 8, the legislature provided families with an alternative (or concurrent) forum to seek redress for, and protection from, what otherwise would be criminal conduct. No longer would family members have to weigh the ramifications of subjecting a loved-one to the criminal justice system and a potential criminal record. Instead, the family court — the court best suited to address family problems — would preside over offenses that otherwise could result in criminal convictions (see Matter of Rollerson v New, 28 Misc 3d 663, 665 [Fam Ct, Kings County 2010]; Matter of Eileen W. v Mario A., 169 Misc 2d 484, 486-487 [Fam Ct, NY County 1996]).
The family court, however, is a court of limited jurisdiction, only possessing powers specifically granted by law. To obtain relief under Family Court Act article 8, petitioner must prove that an offending party committed a family offense, consisting of one or more of the Penal Law violations enumerated in Family Court Act § 812 (1). Put another way, a petitioner is required to prove, by a preponderance of the credible evidence, that a respondent committed an enumerated crime. Lesser conduct, amounting to petty occurrences and impoliteness, do not constitute family offenses (Eileen W., 169 Misc 2d at 488). Although child custody or visitation hearings must include consideration of domestic violence in a broader sense (Domestic Relations Law § 240 [1]), including testimony regarding past instances of emotional and physical abuse by the other parent that may not be encompassed by Family Court Act § 812 (1), such conduct is not properly before the court in a family offense fact-finding trial.
At the conclusion of her case, the mother’s attorney submitted that the father committed the family offenses of harassment in the second degree (Penal Law § 240.26),[2] which proscribes conduct committed with the intent to harass, annoy, *853 or alarm another person, and stalking in the fourth degree (Penal Law § 120.45),[3] which proscribes certain acts intentionally committed without legitimate reason.
To be sure, the circumstances surrounding the father obtaining the December 5 New Jersey order are questionable, but they do not change the fact that the order was legitimate and binding, albeit short-lived. The review and analysis of this exchange is made problematic by the fragmented nature of the communications provided. The petitioner only provided a handful of what was clearly an extensive email exchange that also involved phone calls from the mother to the father.
In light of the foregoing, the court finds that the father did not send the subject emails with the intention of harassing, annoying, or alarming the mother. The New Jersey order gave the father a legitimate reason to contact the mother. Mere words alone are not enough to constitute the family offense of harassment (Matter of Harris v Harris, 5 Misc 3d 1008[A], 2004 NY Slip Op 51262[U] [Fam Ct, Nassau County 2004]). Furthermore, unless speech presents a clear and present danger of some serious substantive evil, it cannot be penalized (People v Dietze, 75 NY2d 47, 51 [1989]).
It is clear from the emails provided that the communications relate to an intensifying custody dispute. The provided email *854 exchange lacks context, which only can be gleaned from reading all of the emails sent by both parties, not just the ones the petitioner provided during the hearing. As to the emails that have been provided, there appear to be no threats, other than implied court action. While the tone of the emails may have been intemperate, the purpose was clearly to ensure that the mother would comply with the order and deliver custody of the child to the father. Absent actual threats of harm or criminal acts, an attempt to enforce a lawful court order cannot be considered harassment. Accordingly, the father did not commit a family offense on December 7, 2012; the court need not analyze the application of the remaining provisions of the harassment statute at this time. The court finds that none of the above referenced communications sent by the father rise to the level of a family offense.
The mother also testified that on December 7, 2012, the father sent her 25 to 30 text messages, and that he called her work several times. She stated that he repeatedly disobeyed her request to stop contacting her at work. The mother could not recall the sum and substance of the messages. She testified that all of the December 7 phone calls were between the father and one of the mother’s coworkers who answered the phone. There was no indication of any improper message having been left for her.
The father testified that he did not send the mother any text messages because he did not have her telephone number. The court credits his testimony and resolves all issues of fact on this issue against the mother. Her memory was poor; her testimony was vague, at times unresponsive, and, based upon the court’s personal observation, wholly unconvincing. The mother never sought to introduce any phone records to contradict the father’s assertion. She did not call any coworker to corroborate her claim of multiple calls to her. Accordingly, the court finds that the father made one call to the mother’s work because she was unresponsive to his efforts to facilitate the New Jersey custody order. For the reasons set forth above, this phone call cannot be considered a family offense against the mother as it was made for a legitimate purpose.
The December 10, 2012 family offense petition is dismissed with prejudice.
December 22, 2013 Violation
The mother’s consolidated violation petition first alleges that on or around December 22, 2013, the father violated this court’s *855 November 20, 2013 TOP. Before reaching the substance of the allegations, the court must first determine whether the mother met her burden of proving that the father had actual notice of the TOP (Family Ct Act § 846-a).
On October 3, 2013, the father was served in court with a TOP that directed him to
“[r]efrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with [the mother] . . . Respondent [father] is not to call Petitioner at work at all. . . Respondent may contact Petitioner (other than at work) in the event of an emergency regarding the child or visitation arrangements,” and to refrain from committing a family offense against her.
In conspicuous language, the October 3, 2013 TOP twice warned that its terms may be extended if the father failed to appear on the next court date.
The father did not appear on November 20, 2013. Although the court indicated that it would take judicial notice that Veronica Mandel, Esq., appeared on the father’s behalf, further examination of the court file calls that fact into question. For purposes of this decision, the court will assume that neither the respondent nor an attorney acting on his behalf appeared; nonetheless, the court finds, by clear and convincing evidence, that the father was personally served with the October 3 TOP, which warned that the TOP may be extended upon his failure to appear in court. Accordingly, the court finds that the TOP’S warnings sufficiently apprised the father that its terms would remain in effect until he reappeared in court. To hold otherwise would allow domestic violence perpetrators to defeat orders of protection by not appearing in court, potentially putting domestic violence victims in peril — clearly not a result that was contemplated by the legislature or required by due process.
As for the substance, the mother testified that some of the father’s December 22 emails violated the TOP’S proscription against all contact with her except regarding an emergency involving the child or to make visitation arrangements. The court has reviewed the emails, which were introduced into evidence, and finds, as appears to be the norm for this deeply hostile relationship, that the father’s December 22 emails started out with a legitimate purpose; however, over time, he *856 was unable to control himself. When the mother did not respond to his message, he began accusing her of child abuse. He stated:
“Do I need to call the police again? This is how I know its you beating on my child. I asked to speak to him. You are dangerous and I’m going to love joy cause judge Gardner told her two years ago I had concerns about your abuse. I’m done all I’m going to say He better not have any bruises or marks or scratches on him tomorrow.”
The court finds that these communications go well beyond the perimeters of that which the TOP allows, and, in and of themselves, are violations of the TOP. Under these circumstances, it is not necessary to prove that an independent family offense occurred. The court notes that its review of the record indicates that the father has made charges of abuse before that were determined to be unfounded. In any event, the communications on their face were not designed to draw attention to a perceived emergency concerning the child so that the situation could be remedied. The communications were designed to annoy, alarm and/or intimidate the mother and, on their face, were not designed to protect the child (see Matter of Lynn TT. v Joseph O., 129 AD3d 1129 [3d Dept 2015]). If the father truly thought that the child was in danger in the mother’s care, his recourse was to contact the proper authorities in the proper manner. Accordingly, the court finds, by clear and convincing evidence, that on or about December 22, 2013, the father willfully violated the TOP by sending the mother communications that did not relate to an emergency regarding the child or visitation arrangements.
April 2014 Violations
The mother also alleged that the father similarly violated the same provisions of this court’s April 3, 2014 TOP. The parties appeared in front of Referee Cohen on that day and Ms. Mandel’s motion to be relieved as counsel was granted. Mr. Moliterno was assigned as new counsel for the father and the TOP was extended under the same terms set forth above. The court takes judicial notice of its records that the Referee advised the father of the TOP on the record, and that the TOP also was mailed to him.
The parties agreed that in court on April 3, 2014, the parties made an off-record agreement to provide the father with phone *857 access to the child. The parties also agreed that each of them had a different understanding of when and how those calls would occur. Resolution of whose understanding was correct is not important because the issue now before this court is whether the father willfully violated the TOR
The court finds that the father willfully violated the TOP later that same day when he emailed the mother the following:
“I am the fourth father and our child is the fourth child you have done this to. When he starts stealing like the other kids do not call me, when he starts acting out because he is alienated from me do not call me and when he starts beating on people since has seen you beat on me do not call me, you deal with it. Just make sure he calls when he is supposed to. I wish I would have listened to your ex’s stupid me.”
This email has nothing to do with visitation or scheduling. It clearly is intended to insult, demean, annoy, and/or humiliate the mother. That, combined with his knowledge of the TOP’S terms, leads this court to conclude that the father willfully violated the TOP.[4]
For the reasons set forth above, the court finds, by clear and convincing evidence, that on or about April 3, 2014, the father willfully violated the TOP by sending the mother a communication that did not relate to an emergency regarding the child or visitation arrangements.
Easter 2014 Church Visit
At the hearing, the mother accused the father of violating the TOP by his conduct at an Easter 2014 church service. The mother and the father’s mother are members of the same church congregation. The father accompanied his mother (the paternal grandmother) to Easter services. Following those services, the church invited parishioners to socialize in the basement. The father did not have prior knowledge that the mother and the child also would be attending the Easter services and social. Upon seeing his son at the social, the father approached him, spoke with him, and picked him up. The *858 mother objected because the father was not then entitled to visitation.[5] She forcibly took the child away.
At trial, the court noted that although the father’s visitation schedule was then-suspended, he violated no order. He did not commit an independent family offense. He did not violate the communication clause by interacting with his son. The TOP was not a “stay away” order. Regardless, the father did not know that the mother and his son would be at the services or at the subsequent social. Indeed, the court finds that the father’s interaction with his son under the circumstances present was not inappropriate or a willful violation of any order. The chance encounter with his son at the church did not constitute visitation, as that term is commonly understood. Nor is there any indication that the father intended to violate the TOP or the order that suspended visitation. Indeed, it is only because of the deeply troubled atmosphere of tension between the parties that one would anticipate a problem would occur during such an otherwise innocuous encounter. The court finds no violation of the TOP occurred on Easter Sunday 2014. Order
As a result of this court’s finding that the father willfully violated two orders of protection, it is ordered that the father appear on July 8, 2015, at 10:30 a.m., for disposition in accordance with Family Court Act § 846-a and Judiciary Law § 753; for further proceedings on the father’s jurisdiction motion; and for trial on the custody/visitation case.

. To the extent that the petitioner may seek redress for others who do not fall within the protected class of Family Court Act § 812 (1), such as coworkers, the petition is dismissed with prejudice for lack of jurisdiction.

. “A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
“1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or
“2. He or she follows a person in or about a public place or places; or
*853 “3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.”

. “A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:
“1. is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person’s immediate family or a third party with whom such person is acquainted; or
“2. causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, a member of such person’s immediate family or a third party with whom such person is acquainted, and the actor was previously clearly informed to cease that conduct; or
“3. is likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person’s place of employment or business, and the actor was previously clearly informed to cease that conduct.”

. The remainder of the communications on April 3, 2014 involved scheduling issues and/or issues concerning phone access, which this court considers to be akin to visitation. Accordingly, they do not violate the TOP.

. In fact, on March 13, 2014, Court Attorney-Referee Ronald Cohen signed an order to show cause that granted interim relief of suspending the father’s visitation.