# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 102
The People &c.,
   Appellant,
  v.
Anthony Lagano,
   Respondent.

Thomas B. Litsky, for appellant.
Peter E. Brill, for respondent.

RIVERA, J.:

The issue in this People's appeal is whether the Appellate Term erroneously held that the evidence was legally insufficient to establish defendant's guilt of harassment in the second degree beyond a reasonable doubt. We conclude that, viewing the evidence in the light most favorable to the prosecution, it was legally sufficient to establish that defendant's

- 1 -

statements to the victim that her children were going to get a bullet in their heads, and that he was going to firebomb her home and kill her and her family were serious and unequivocal threats of physical harm. Accordingly, we reverse.

I.

Defendant Anthony Lagano—a police officer at the time of the incident—was convicted after a bench trial of harassment in the second degree under Penal Law § 240.26 (1) based on statements he made during a telephone call with D.D., his former intimate partner. Previously, the two were romantically involved for a year and had briefly lived together when defendant informed her that he was going away for a counseling program. For the next year and a half, D.D. did not see defendant but they stayed in contact by telephone. The victim began to suspect that defendant had lied about the counseling program when she saw him on television at a public event. She later found him at his ex-girlfriend's home. The relationship deteriorated from there.

At defendant's bench trial, D.D. testified that thereafter she saw defendant on one occasion drive by her home and stare at her. On another occasion, defendant called her, cursed at her, and accused her of seeing someone else. When the two spoke on the phone later that same night, D.D. recorded the heated conversation during which defendant asserted that D.D. and her husband had been extorting defendant and that he would kill her and her family.

The relevant portions of the phone transcription identify defendant as saying, in pertinent part:

"I have all the receipts for [your husband], and I'm gonna bring them to my job, I'm gonna show them the text messages shaking me down for money. I'm gonna combine it and show them that I've been extorted by you and him. He's gonna get arrested and lose his job."

\*\*\*

"They're gonna get a bullet in their f\*\*\*\*ing head, that's what's gonna happen to your kids. So good good luck, good luck."

\*\*\*

"I'm gonna fire bomb your f\*\*\*\*ing house, you hear me? I will f\*\*\*\*king kill yous all, you f\*\*\*\*ing a\*\*hole."

D.D. testified that she was upset and believed defendant to be dangerous, but did not call the police immediately because it was very late at night and she wanted to make a copy of the call before turning it over to the police.

The next morning, defendant spoke with his precinct captain, who, at trial, testified that defendant admitted the "heated argument" with D.D. and that defendant suspected D.D. was "shaking him down." Defendant also disclosed that he "said something that he should not have said. . . . Something along the lines of that he was going to shoot her kids in the head." The captain notified her supervisor and after an investigator spoke with D.D., defendant was arrested later that same day. He was subsequently charged with one count each of aggravated harassment and second-degree harassment, was convicted on the latter

count, and was required to attend twelve anger management classes as part of his suspended 15-day prison sentence.[1]

The Appellate Term reversed, concluding that "an outburst, without more, does not constitute a violation" of the second-degree harassment statute, and that defendant's speech did not present "a clear and present danger of some serious substantive evil" (72 Misc 3d 138[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]). A Judge of this Court granted the People leave to appeal (37 NY3d 1097 [2021]).

II.

The sole issue presented is whether the evidence at trial is legally sufficient to support defendant's conviction of second-degree harassment. We conclude that it is. "The standard for appellate review of the legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*People v Taylor*, 94 NY2d 910, 911 [2000] [internal quotation marks omitted]). A reviewing court must determine "whether inferences of guilt could be rationally drawn from proven facts" (*id.*), giving "the benefit of every reasonable inference" to the prosecution (*People v Cintron*, 95 NY2d 329, 332 [2000]).

"A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person," they "strike[ ], shove[ ], kick[ ] or otherwise subject[ ]

---

[1] The court also issued an order of protection in favor of D.D. and her children, and prohibited defendant from carrying a firearm.

such other person to physical contact, or attempt[ ] or threaten[ ] to do the same" (Penal Law § 240.26[1]). Of course, the law only applies to "constitutionally proscribable expression" (*People v Dietze*, 75 NY2d 47, 51 [1989]). A defendant is thus chargeable for a threatening statement that is "serious, should reasonably have been taken to be serious, or was confirmed by other words or acts showing that it was anything more than a crude outburst" (*id*. at 53-54). Put another way, the statute criminalizes a "true threat," not mere angry words; hence "genuine threats of physical harm fall within the scope of the statute [while] an outburst, without more, does not" (*id*. at 54). A "true threat" is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm.

Here, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of harassment in the second degree beyond a reasonable doubt (*see Taylor*, 94 NY2d at 911). During defendant's phone call with D.D., he accused D.D. and her husband of extorting him. He also made several threats, first that her children would get a bullet in their heads, then that he would firebomb her home, and finally that he would kill the entire family. Contrary to the Appellate Term's conclusion, a rational factfinder could have determined that this was not a mere outburst, but escalating threats of deadly violence targeted at D.D. and her family. The angry tone of the call, defendant's use of profanities to refer to D.D. and her children, and the fact that defendant threatened to use deadly violence all support a finding that the statements were not said in jest. Indeed, the morning after this call defendant admitted to his captain that he said

something he should not have—to the effect that he was going to shoot D.D.'s children in the head.

A rational factfinder could have concluded that defendant's statements were not just a rant or mere angry words said by someone in an intimate personal relationship gone bad, but rather serious threats of specific ways he would kill D.D. and her family: firebombing the home and shooting the children in the head. Defendant also communicated a motive for his threats: his alleged belief that D.D. had extorted him, and, as he had previously claimed, that she had cheated on him. The threats on the call were specific and unequivocal—the type of statements that a reasonable person in D.D.'s position, knowing that defendant was an armed police officer who was trained in the use of deadly force and who believed her to be unfaithful and an extortionist, would commonly understand as words describing intended violent action and not a crude outburst, puffery, or bluffs.

To the extent defendant relies upon the Appellate Term's finding that his statements did not communicate an immediate threat of physical harm—a present danger—the statute does not include a temporal requirement. The timing of the threatened action may go to whether it is a real and unequivocal threat, but does not foreclose a factual finding that the threat is genuine in nature. If, under the totality of the circumstances, a threat would appear genuine to a reasonable person, the statutory element is satisfied.

In sum, on this record, the evidence was sufficient for a reasonable trier of fact to conclude that defendant unequivocally threatened D.D. with physical contact of a serious nature, with the intent to harass, annoy or alarm her.

Accordingly, the order of the Appellate Term should be reversed and the case remitted to the Appellate Term for a determination of the facts and issues raised but not determined on appeal to that Court (CPL 470.25 [2] [d]; 470.40 [2] [b]).

Order reversed and case remitted to the Appellate Term of Supreme Court for the 2nd, 11th and 13th Judicial Districts, for a determination of the facts and issues raised but not determined on appeal to that Court (CPL 470.25 [2] [d]; 470.40 [2] [b]). Opinion by Judge Rivera. Acting Chief Judge Cannataro and Judges Garcia, Wilson, Singas and Troutman concur.

Decided December 13, 2022