Matter of Andrew C.B. v Allegra B.J. (2026 NY Slip Op 01842)

Matter of Andrew C.B. v Allegra B.J.

2026 NY Slip Op 01842

Decided on March 26, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 26, 2026

Before: Manzanet-Daniels, J.P., Scarpulla, Kapnick, Higgitt, Rosado, JJ. 

Docket No. O-4120/24|Appeal No. 6220|Case No. 2025-05187|

[*1]In the Matter of Andrew C.B., Respondent,
vAllegra B.J., Appellant.

Schlacter & Associates, New York (Jed R. Schlacter of counsel), for appellant.
Andrew C. Behm, for respondent pro se.

Order, Family Court, New York County (Caterina De Peralta, Referee), entered on or about May 22, 2025, which, to the extent appealed from, after a hearing, found that respondent committed the family offense of harassment in the second degree against petitioner, unanimously reversed, on the law, without costs, the order vacated, and the petition dismissed.
Family Court providently exercised jurisdiction over this matter pursuant to Family Court Act § 812(1)(e). The undisputed evidence established that the parties were former domestic partners registered with nonparty the City of New York between March 10, 2020 and August 15, 2022 and, accordingly, had an "intimate relationship" within the meaning of that statute, even if their relationship ended before the family offense petition was filed (see Matter of Kimberly O. v Jahed M., 152 AD3d 441, 441 [1st Dept 2017], lv denied 30 NY3d 902 [2017]). That the parties "were not romantically involved for a number of years preceding the filing of the petition is of no moment under the statute" (Matter of Phyllis H. v Didier C., 182 AD3d 511, 512 [1st Dept 2020]).
The testimony shows that the incident that prompted the filing of the petition arose from a dispute over who would have ownership and custody of a dog that was adopted during their domestic partnership. On the day of the incident, petitioner was supposed to transfer custody of the dog to back to respondent. He did not do so, but instead, petitioner brought a document for respondent to sign, which provided that respondent must relinquish any and all ownership and custody of the dog to him. The evidence adduced at the fact-finding hearing establishes that respondent, while demonstrably upset and arguing with petitioner in respondent's apartment as to why petitioner should return the dog to her, stated to her fiancÉ that she would have to go to "Philadelphia because that's where they sell guns and shoot him. Because that's the only way I'm going to get my . . . dog back."
The evidence does not establish that respondent's actions during the May 22, 2024 incident constituted the family offense of harassment in the second degree (Penal Law § 240.26 [1]). Nothing in the record demonstrates that respondent's statement was confirmed by other words or acts showing that her threat to petitioner was anything more than a crude outburst (see People v Dietze, 75 NY2d 47, 53-54 [1989]). The fact-finding testimony and the audio recording in evidence also established that respondent's "statement cannot be penalized because it is not a genuine threat of physical harm nor does it present a clear and present danger of some serious substantive evil" (Matter of Kirsten G. v Melvin G., 143 AD3d 614, 614 [1st Dept 2016] [internal quotation marks omitted]). Indeed, petitioner's testimony and the audio recording of the argument demonstrate that after respondent's outburst, petitioner stayed in respondent's apartment for roughly another 10 to 20 minutes and continued to argue about why he should be allowed to keep the dog. Petitioner also acknowledged that respondent did not touch or throw anything at him during the incident. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 26, 2026