# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 15
The People &c.,
 Appellant,
 v.
Marina Y. Viviani,
 Respondent.
-------------------------------
No. 16
The People &c.,
 Appellant,
 v.
Justin Hope,
 Respondent.
-------------------------------
No. 17
The People &c.,
 Appellant,
 v.
Nicole Hodgdon,
 Respondent.


Case No. 15:
Caitlin Halligan, for appellant.
Michael S. Pollok, for respondent.
Barbara D. Underwood, for intervenor-respondent.

Case No. 16:
Caitlin Halligan, for appellant.
Barbara D. Underwood, for intervenor-respondent.

Case No. 17:
Caitlin Halligan, for appellant.
James R. Bartosik, Jr., for respondent.
Barbara D. Underwood, for intervenor-respondent.
Patricia Weiss, amicus curiae.

GARCIA, J.:

As part of the Protection of People with Special Needs Act, the Legislature enacted Executive Law § 552, which created a special prosecutor, appointed by the Governor, empowered to investigate and prosecute crimes of abuse or neglect of vulnerable victims

in facilities operated, licensed, or certified by the State.  The special prosecutor, acting pursuant to this statutory authority, obtained indictments against the three defendants in the cases before us.  Defendants assert that the statute is an unconstitutional delegation of core prosecutorial authority away from the County District Attorneys—elected constitutional officers—to an unelected appointee of the Governor.  The Attorney General, intervening pursuant to Executive Law § 71, argues for a "saving construction" that would have us read into the law certain conditions on the special prosecutor's authority.  We recognize that this well-intentioned legislation was aimed at protecting a particularly vulnerable class of victims.  But we cannot rewrite a statute in order to save it.  Accordingly, we hold the provisions of Executive Law § 552 creating a special prosecutor with authority concurrent with that of the District Attorneys to be unconstitutional and, on that ground, affirm.

I.

Following news reports of physical and sexual abuse of individuals with special needs at facilities operated or supported by the State, the Governor appointed a Special Advisor on Vulnerable Persons to investigate these alleged institutional failings and to develop appropriate recommendations.  The ensuing report, released in April 2012, concluded that there was a disinclination on the part of law enforcement to invest the resources necessary to investigate and prosecute cases of abuse and neglect at these facilities (*see* Clarence J. Sundram, Report to Governor Andrew M. Cuomo, *The Measure of a Society: Protection of Vulnerable Persons in Residential Facilities Against Abuse & Neglect* [2012] [Sundram Report]).  Accordingly, the report recommended, among other

things, the creation of an office with authority to investigate and prosecute abuse and neglect crimes against vulnerable persons (*see id.*).[1]

The Legislature, in turn, recognizing "the need to strengthen and standardize the safety net for vulnerable persons . . . who are receiving care from New York's human service agencies and programs," enacted the "Protection of People with Special Needs Act" (Special Needs Act) (L 2012, ch 501, § 2, Part A, § 1). As this Court has previously recognized, "the statutory overhaul embodied in the [Special Needs Act] was necessary not only to address isolated incidents of abuse and neglect, but also to resolve systemic problems, such as inadequate staffing, training, and supervision, which often cause or contribute to incidents of abuse and neglect" (*Matter of Anonymous v Molik*, 32 NY3d 30, 39 [2018]). Based on specific recommendations in the Sundram Report, the Special Needs Act created a "justice center," whose "primary focus w[ould] be on the protection of vulnerable persons" (L 2012, ch 501, part A, § 1). To further that goal, the Special Needs Act empowered the justice center to investigate reports of abuse and neglect and to conduct disciplinary proceedings for state employees in any instance of substantiated findings (Executive Law § 552 [1]). The two assigned responsibilities are served by separate units within the justice center: "one responsible for the prosecution of criminal matters and one for the resolution of non-criminal matters" (*id.*).

---

[1] A "vulnerable person" is defined as "a person who, due to physical or cognitive disabilities, or the need for services or placement, is receiving services from a facility or provider agency as defined in [Social Services Law § 488 (4)]" (Executive Law § 550 [5]).

Beyond providing for the platform and structure of the justice center, Executive Law § 552 created a new "special prosecutor and inspector general" (special prosecutor), appointed by the Governor, with the express authority to: (1) "investigate and prosecute" offenses involving abuse or neglect against a vulnerable person by the person's professional caregiver; and (2) "cooperate with and assist district attorneys and local law enforcement in their efforts against such abuse or neglect of vulnerable persons" (*id.* § 552 [2] [a] [i]-[ii]). To "bolster the ability of the state to respond more effectively to abuse and neglect of vulnerable persons, without creating additional burdens on local law enforcement," the Legislature, in the Special Needs Act's prefatory statement, expressed its intent to give the justice center "concurrent authority with district attorneys to prosecute abuse and neglect crimes committed against such persons" (L 2012, ch 501, part A, § 1). Nevertheless, it also included in the legislation the admonition that "nothing [in the statute] shall interfere with the ability of district attorneys at any time to receive complaints, investigate and prosecute any suspected abuse or neglect" (Executive Law § 552 [2] [a]).

Several provisions in the statute concern specific prosecutorial functions. First, although the special prosecutor may "apply for search warrants," absent "exigent circumstances," the special prosecutor "shall give prior notice of the [warrant] application to the district attorney of the county in which such a warrant is to be executed" (*id.* § 552 [2] [b]). Second, the special prosecutor "may, after consultation with the district attorney," appear in any grand jury and its attending superior court "for the purpose of managing and conducting . . . a criminal action or proceeding concerned with an offense where any conduct constituting or requisite to the completion of or in any other manner related to such

offense involved the abuse or neglect of a vulnerable person" (*id.* § 552 [2] [c]).  While appearing in court or before the grand jury, the special prosecutor "may exercise all the powers and perform all the duties in respect of such actions or proceedings which the district attorney would otherwise be authorized or required to exercise or perform" (*id.*).[2]

## II.

Each of the three appeals at issue here involves a defendant who was alleged to have sexually abused a vulnerable person in the defendant's care—conduct falling within the purview of the special prosecutor's jurisdiction.  In each case, the special prosecutor appeared before the grand jury and obtained an indictment charging various sex offenses.  Each defendant moved to dismiss the indictment, arguing that Executive Law § 552, creating the special prosecutor, is an impermissible attempt to delegate prosecutorial authority to an unelected official from the justice center and is therefore facially unconstitutional.  The Attorney General intervened and maintained that, for the statute to pass constitutional muster, it must be read to allow the special prosecutor to pursue a case only "as a delegate of the County District Attorney's prosecutorial authority."  The trial court in each case, relying primarily on the reasoning of the dissent in *People v Davidson* (27 NY3d 1083, 1086-1096 [2016, Rivera, J., dissenting]),[3] held that, in order to avoid finding Executive Law § 552 unconstitutional, the statute must be construed to authorize

---

[2] Consistent with the prosecutorial authority provided for in the Special Needs Act, the Legislature amended the Criminal Procedure Law's definition of "District Attorney" to include the special prosecutor or his or her assistants "when acting pursuant to their duties in matters arising under [the Special Needs Act]" (CPL 1.20 [32]).

[3] In *Davidson*, the Court held the facial constitutional challenge to Executive Law § 552 unpreserved and, therefore, beyond our power to review (*see* 27 NY3d at 1086 & n *).

the special prosecutor to act only if the local District Attorney (1) consents to the special prosecutor conducting the prosecution, and (2) retains ultimate responsibility for the prosecution. Finding that those requirements had not been met, the court in each case dismissed the indictment.

The Appellate Division affirmed in all three cases, holding that the Legislature may not grant the special prosecutor "independent, 'concurrent authority with district attorneys' to prosecute individuals accused of crimes against vulnerable persons" (*People v Hodgdon*, 175 AD3d 65, 68 [3d Dept 2019], quoting *Davidson*, 27 NY3d at 1088 [Rivera, J., dissenting]; *see People v Viviani*, 174 AD3d 1069, 1069 [3d Dept 2019] [affirming for the reasons in *Hodgdon*]; *People v Hope*, 174 AD3d 1069, 1069 [3d Dept 2019] [same]). District Attorneys, the Appellate Division held, are elected constitutional officers who possess the "prosecutorial authority" of determining "'whom, whether and how to prosecute,'" and the Legislature "has no authority to transfer" that "essential function" of a District Attorney "'to a different officer chosen in a different manner'" (*Hodgdon*, 175 AD3d at 68-69, quoting *Davidson*, 27 NY3d at 1091-1093). Applying the canon of statutory construction that seeks to avoid a constitutional conflict when the language of a statute is ambiguous, the Appellate Division read the statute to "permit[] the [s]pecial [p]rosecutor to prosecute offenses arising from the abuse and neglect of vulnerable individuals only where the [s]pecial [p]rosecutor first obtains the knowing, written consent of a local district attorney to do so, and the local district attorney agrees to retain ultimate responsibility for the prosecution" (*id.* at 69). As those requirements had not been met, the

Appellate Division held that the indictment was properly dismissed in each case (*see id.* at 69-70).

This Court granted leave to appeal in each case and we now affirm. We hold, however, that the relevant provisions of the Special Needs Act granting the special prosecutor concurrent prosecutorial authority with the District Attorneys are not reasonably interpreted as proposed by the Attorney General and are therefore unconstitutional.

III.

A statute "'enjoys a strong presumption of constitutionality'" (*Overstock.com, Inc. v New York State Dept. of Taxation & Finance*, 20 NY3d 586, 593 [2013], quoting *LaValle v Hayden*, 98 NY2d 155, 161 [2002]). To rebut that presumption, the party attempting to strike down a statute as facially unconstitutional bears the "heavy burden" of proving "beyond a reasonable doubt" that the statute is "in conflict with the Constitution" (McKinney's Cons Laws of NY, Book 1, Statutes § 150 [a], Comment; *see Overstock.com*, 20 NY3d at 593; *Cohen v Cuomo*, 19 NY3d 196, 201-202 [2012]; *Matter of Fay*, 291 NY 198, 207 [1943]). Despite that appropriately heavy burden, we conclude that the challenged portions of Executive Law § 552—those granting the special prosecutor concurrent prosecutorial powers with the District Attorneys—are facially unconstitutional.

The question presented here turns on the impact of legislative action on the authority of a constitutional officer. More than 100 years ago, in *People ex rel. Wogan v Rafferty*, we considered a constitutional challenge to legislation authorizing the Kings County Clerk, an elected constitutional officer, to appoint a Deputy County Clerk who would have the full power to act as the chief clerk for the County Court of Kings County (208 NY 451,

455-456 [1913]).  The "fundamental objection" to the law was that it took away "from the county clerk, who is a constitutional officer, an integral and essential part of his office, to wit, the clerkship of the County Court," and gave it to a non-elected, non-constitutional officer (*id.* at 455-456).  In holding the challenged provisions unconstitutional, this Court made clear that "[w]here the Constitution establishes a specified office, or recognizes its existence, and prescribes the manner in which it shall be filled, the [L]egislature may not transfer any essential function of the office to a different officer chosen in a different manner" (*id.* at 456).

Here, we must consider whether the creation of the special prosecutor by the Legislature runs afoul of the rule set out in *Wogan*—namely, whether Executive Law § 552 takes an essential function from a constitutional officer and gives it to a different officer chosen in a different manner.  We conclude that it does.

"Through colonial times and until 1796," the Attorney General had exclusive authority and responsibility for prosecuting crimes in the State (*People v Gilmour*, 98 NY2d 126, 130 [2002]).  That year saw the genesis of the office of the District Attorney, when, in an effort to "provide[] for some local control over criminal prosecutions," the Legislature vested prosecutorial powers in "'assistant Attorneys General,' who, despite their misleading title, were independent of the State Attorney General," and "serve[d] in each of the seven districts of the State" (*id.*).  In 1801, the Legislature created "the office of District Attorney" (*id.*).  The title denoted jurisdiction: each prosecutor would have authority over a specific district, comprised of several counties (*see id.*). Jurisdiction changed—but the title remained—in 1818, when the Legislature created "a separate

District Attorney for each county" (*id.*).  By this time, it was already well settled that each District Attorney's office had general prosecutorial authority within the county in which it was situated (*see* L 1818, ch 23; *Gilmour*, 98 NY2d at 130).  The District Attorney was made a constitutional officer in 1821 (*see* NY Const, art IV, §§ 6, 9 [1821]), and the Constitution of 1846 made the office an elective one (*see* NY Const, art X, § 1 [1846])— and so it remains (*see* NY Const, art XIII, § 13).

Although the Constitution establishes the elected office of the District Attorney, it does not assign prosecutorial authority to any constitutional officer, leaving that allocation as a matter for the Legislature (*see Gilmour*, 98 NY2d at 129-133; *Matter of Johnson v Pataki*, 91 NY2d 214, 225 [1997]; *see also Wogan*, 208 NY at 461 ["the legislature may prescribe the powers and duties of the clerks of the Supreme Court, but it may not deprive the clerks . . . of the right to exercise and discharge those powers and duties by any form of legislation"]).  The County Law accomplishes the task by providing that it is the "duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which [such District Attorney] shall have been elected or appointed" (County Law § 700 [1]).  District Attorneys, in sum, "have plenary prosecutorial power in the counties where they are elected" (*People v Romero*, 91 NY2d 750, 754 [1998]).  And, as we have explained on a number of occasions, "the essence of a District Attorney's constitutional, statutory and common-law prosecutorial authority is the 'discretionary power to determine whom, whether and how to prosecute [in] a criminal matter'" (*Matter of Haggerty v Himelein*, 89 NY2d 431, 436 [1997] [brackets omitted], quoting *Matter of Schumer v Holtzman*, 60 NY2d 46, 52 [1983]; *see Matter of Soares v*

*Carter*, 25 NY3d 1011, 1014 [2015] ["It is within the sole discretion of each district attorney's executive power to orchestrate the prosecution of those who violate the criminal laws of this state"]).[4]

The history of the office of the District Attorney and the scope of the authority allocated to this officer answers the constitutional question. Executive Law § 552 deprives the elected District Attorneys of an essential function of their constitutional office— namely, the "'discretionary power to determine whom, whether and how to prosecute [in] a criminal matter'" (*Haggerty*, 89 NY2d at 436 [brackets omitted], quoting *Schumer*, 60 NY2d at 52)—by vesting concurrent discretionary power in a different officer, appointed by the Governor (*see* L 2012, ch 501, part A, § 1; Executive Law § 552 [2] [a]-[c]). Accordingly, the statute runs afoul of the rule set out in *Wogan*.

The case law and statutes put forward by the special prosecutor in arguing against this conclusion involve delegations of prosecutorial authority that operate quite differently. In those examples, authority is delegated on a case-by-case basis, in most instances to the Attorney General, another constitutional officer with some historical law enforcement power (*see Gilmour*, 98 NY2d at 129-131).

For example, in *People v Leahy*, we considered the appointment of a special prosecutor made by a Supreme Court Justice at the request of the local District Attorney pursuant to County Law § 701 (*see* 72 NY2d 510, 514 [1988]). Although, as we noted, that statute serves the "exceptional function of displacing an elected constitutional officer,"

---

[4] By contrast, the Attorney General exercises prosecutorial power only when specifically authorized by statute (*see Gilmour*, 98 NY2d at 131).

we recognized that this authority can be used only in a "'particular case' in which the duly elected District Attorney is unable or disqualified to act," and is "designed narrowly by its terms . . . to fill emergency gaps in an elected prosecutorial official's responsibility" (*id.* at 513-514, quoting County Law § 701). Unlike the Governor's authority in Executive Law § 552, County Law § 701 does not authorize the court to make a discretionary decision to appoint a special prosecutor to displace or act in parallel with a qualified District Attorney; rather, the statute comes into play only when the local elected District Attorney is incapable of prosecuting. In *Leahy*, we concluded that the statute had not been strictly complied with and dismissed the indictment, noting that "our holding . . . comports with an undeviating line of decisions fastidiously circumscribing superseders or transfers of authority of elected prosecutors in a wide variety of situations" (*id.* at 515).

Equally misplaced is the special prosecutor's reliance on Executive Law § 63 (2), Executive Law § 70-a, and Judiciary Law § 177-c. Each of those statutes involves a delegation of prosecutorial authority to one of the elected constitutional offices responsible for conducting criminal prosecutions—the District Attorney or the Attorney General (*see* Executive Law § 63 [2] [affording the Governor the discretion to supersede the local District Attorney and appoint the Attorney General to prosecute a local crime]; Executive Law § 70-a [creating the Statewide Organized Crime Task Force, the head of which is a deputy attorney general who is authorized to prosecute cases involving organized crime]; Judiciary Law § 177-c [creating the Special Narcotics Prosecutor for New York City, the head of which is an assistant district attorney appointed to the staff of one of the District Attorney's Offices in the five boroughs]).

All told, there is simply no analogy—in precedent or in statute—to Executive Law § 552's creation of a state-wide prosecutor, appointed by the Governor, with concurrent prosecutorial authority over a set of enumerated crimes.

IV.

Nor can the constitutionality of Executive Law § 552 be preserved by application of the canon of statutory interpretation providing that a statute should be construed, whenever possible, in a way that avoids placing its constitutionality in doubt (*see Matter of Lorie C.*, 49 NY2d 161, 171 [1980]). Although it is well settled that "a statute ought normally to be saved by construing it in accord with constitutional requirements, . . . the very language of the statute must be fairly susceptible of such an interpretation; put otherwise, the saving construction must be one which the court 'may reasonably find implicit' in the words used by the Legislature" (*People v Dietze*, 75 NY2d 47, 52 [1989] [internal citation omitted], quoting *People ex rel. Morriale v Branham*, 29 NY 312, 317 [1943]). The Attorney General proposes we "find implicit" in the statute a requirement that, in order for the special prosecutor to act, the local District Attorney must (1) consent— perhaps even in writing—to the prosecution, and (2) retain the ultimate responsibility for that prosecution. This we cannot do.

The touchstone of the avoidance canon is the text of the statute, and, unquestionably, the text of Executive Law § 552 contains no express requirement that the local District Attorney consent to, and retain authority for, the prosecution of the designated crimes (*see Pajak v Pajak*, 56 NY2d 394, 397 [1982] ["The failure of the Legislature to (include a specific requirement or limitation in a statute) must be viewed as a matter of legislative

design"]; McKinney's Cons Laws of NY, Book 1, Statutes § 74 ["the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended"]). Indeed, as the Appellate Division acknowledged, there is no "explicit[]" support in the statute for the saving construction advanced by the Attorney General (*Hodgdon*, 175 AD3d at 69). To the contrary, it is at odds with the Special Needs Act.

In the Special Needs Act's prefatory statement, the Legislature made clear its intent to afford the special prosecutor and the County District Attorneys "concurrent" prosecutorial authority (L 2012, ch 501, part A, § 1). It has long been recognized that an act's prefatory statement, although not part of the statute itself, is both an important tool "for the purpose of expounding the language of a statute" and "a key to open the mind of [the Legislature ] as to . . . the objects[] which are to be accomplished by the provisions of the statute" (Joseph Story, *Commentaries on the Constitution of the United States* [1883]; *see Bank for Savings v Grace*, 102 NY 313, 319 [1886] ["The preamble . . . may be said to state the ground and cause of making (the act)"]; McKinney's Cons Laws of NY, Book 1, Statutes § 122, Comment ["a preamble frequently contains recitals which illuminate the purpose and intent of the enactment"]). The purpose and intent of the Special Needs Act was to give the special prosecutor and District Attorneys concurrent power over certain prosecutions—that is, "authority on the same matters" (Black's Law Dictionary [11th ed 2019] [defining "concurrent"]).

Moreover, the preamble's declaration of intent to grant concurrent authority finds concrete expression in the text of the statute. The Special Needs Act explicitly allows the

special prosecutor to "exercise all the powers and perform all the duties" that the District Attorney "would be authorized or required to exercise or perform" (Executive Law § 552 [2] [c]), and makes a corresponding amendment adding the special prosecutor to the definition of "District Attorney" found in the Criminal Procedure Law (CPL 1.20 [32]). These provisions plainly refute any intention on the part of the Legislature to condition the special prosecutor's authority on the conduct of the local District Attorney.

Notwithstanding the absence of any language in the text requiring consent and retention of authority by the District Attorney, and the specific language making clear the omission was intentional, the parties suggest that the proposed conditions on the special prosecutor's authority can be gleaned from several of the statute's subdivisions. We disagree.

The statute does include subdivisions directing the special prosecutor to give the local District Attorney "notice" of a search warrant application (Executive Law § 552 [2] [b]), and to "consult[]" with the local District Attorney as to "the time and place" of any appearance before a grand jury or superior court (*id.* § 552 [2] [c]). The clear import of these modest requirements is that the special prosecutor must keep the local District Attorney informed of her intention to take certain steps, not that the special prosecutor must obtain the local District Attorney's permission before doing so. Put simply, the aims of the cited provisions are coordination and scheduling, not consent.

The proposed requirement that the local District Attorney retain ultimate responsibility for the prosecution similarly lacks statutory support and would instead need to be imported from language found in this Court's decisions in *People v Soddano* (86

NY2d 727 [1995]) and *People v Van Sickle* (13 NY2d 61 [1963]).  However, in both

*Soddano* and *Van Sickle*, the issue was whether the District Attorney had properly

delegated authority to a public officer or private party (*see Soddano*, 86 NY2d at 728 [State

Trooper prosecuting speeding offense]; *Van Sickle*, 13 NY2d at 62-63 [complaining

witness prosecuting misdemeanor assault]).  In interpreting the relevant statutes making

the duty to conduct all prosecutions within the county non-delegable by the District

Attorney except as specified in the law, we held that the local District Attorney must, in all

cases, retain the ultimate "responsibility" for conducting prosecutions in his or her county

(*Soddano*, 86 NY2d at 728; *Van Sickle*, 13 NY2d at 62-63; *see* County Law § 700 [1]).

The "ultimate responsibility" language was a limit or check on what authority the District

Attorney could delegate under the controlling statutes (*see Soddano*, 86 NY2d at 728).  It

was not intended as a restriction on the Legislature or as justification for reading that

language into other laws.[5]

Finally, neither of these suggested requirements can be inferred from the statutory

language providing that "nothing herein shall interfere with the ability of district attorneys

at any time to investigate and prosecute any suspected abuse or neglect" (Executive Law

§ 552 [2] [a]).  At best, this provision reinforces the Legislature's intent that the special

prosecutor enjoys concurrent rather than exclusive authority (*see* L 2012, ch 501, part A,

§ 1).  And concurrent jurisdiction, even if strained to mean that the District Attorney has

the power to intervene in any case, does not overcome the unconstitutional delegation of

---

[5] Of course, our decision today does not affect that process for delegation of authority by
the local District Attorney (*see* County Law § 700; *see also Soddano*, 86 NY2d at 728).

independent prosecutorial authority and discretion to the special prosecutor.  We rejected

a similar argument in *Matter of Schumer v Holtzman* and gave "no effect" to language in a

memorandum of understanding that the delegation of authority thereunder was "consistent

with the [District Attorney]'s statutory accountability" (60 NY2d at 53).  Instead, we

interpreted the memorandum "to mean what the parties obviously intended it to mean: that

the appointee was to have a free hand in all aspects of [the delegated] matter" (*id.*).  Here,

too, it is clear the Legislature intended the special prosecutor to operate with a "free hand

in all aspects" of the case despite the "nothing herein" clause in the statute (*see* Executive

Law § 552 [2] [c]).

This Court is "not at liberty to save a statute by, in effect, rewriting it in a manner

that contravenes its unambiguously articulated legislative purpose" (*Wood v Irving*, 85

NY2d 238, 245 [1995]; *see Dietze*, 75 NY2d at 53 ["An attempt by this court to so limit

the statute would, thus, be tantamount to wholesale revision of the Legislature's enactment,

rather than prudent judicial construction"]).  We must, therefore, reject the Attorney

General's proposed construction (*see People v Smith*, 63 NY2d 41, 79 [1984] [declining

the Attorney General's invitation to read into the challenged legislation a saving provision

that "would require us to rewrite the statute"]).

V.

We will, however, consider whether those unconstitutional subdivisions "may be

severed from the valid and the remainder of the statute preserved" (*Westinghouse Elec.*

*Corp. v Tully*, 63 NY2d 191, 196 [1984]; *see Wogan*, 208 NY at 462 [holding

unconstitutional only those provisions which interfered with the rights of the county

clerk]).  This is a question of legislative intent, namely "whether the [L]egislature, if partial invalidity [of the statute] had been foreseen, would have wished the statute to be enforced with the valid part exscinded, or rejected altogether" (*People ex rel. Alpha Portland Cement Co. v Knapp*, 230 NY 48, 60 [1920]).  This principle is one of "function" rather than "form," and the answer to the inquiry "must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots" (*id.*).

Here, given that the purpose of enacting the Special Needs Act was to "bolster the ability of the state to respond more effectively to abuse and neglect of vulnerable persons" (L 2012, ch 501, part A, § 1), it is apparent that the Legislature would wish that as much of Executive Law § 552 aimed at protecting that class of victims as can be preserved remain in effect.  Nor would excising the offending provisions leave the remainder without any beneficial impact.  Therefore, while the subdivisions of the statute that provide the special prosecutor with the discretionary authority to bring criminal cases (*see* Executive Law § 552 [1], [2] [a] [i]; [b]; [c]) must be struck as unconstitutional for the reasons discussed above, the portion of Executive Law § 552 (1) that provides the special prosecutor with non-prosecutorial functions should remain in force.  Likewise, we leave intact Executive Law § 552 (2) (a) (ii), which empowers the special prosecutor "to *cooperate* with and assist district attorneys and other local law enforcement officials in their efforts against . . . abuse or neglect of vulnerable persons," without interfering with those efforts (emphasis added).  Cooperation with the local District Attorney furthers the overarching goal of the Legislature—providing resources to address crimes of abuse and neglect committed

against vulnerable persons—without infringing on that constitutional officer's essential authority.

We have considered the special prosecutor's remaining contentions and find them to be without merit.

* * *

We hold that Executive Law § 552 is unconstitutional to the extent it empowers the special prosecutor with concurrent prosecutorial authority. Accordingly, in each case, the order of the Appellate Division should be affirmed.

STEIN, J. (concurring):

I concur in the Court's opinion. However, I write separately to emphasize what is, in my view, an important limitation on the scope of the Court's decision regarding the validity of Executive Law § 552 (2). Specifically, each of the three defendants in these cases was charged in an indictment with at least one felony (*cf. People v Davidson*, 27 NY3d 1083, 1085-1086 [2016] [explaining, in rejecting a challenge to the special

- 1 -

prosecutor's authority to commence a prosecution by misdemeanor information, that "[t]here is no indication that the statute governs proceedings in local courts at all"]).  As the majority here explains (majority op at 10-11), the special prosecutor fails to cite any case in which this Court has countenanced the prosecution of a felony in superior court by an appointed special prosecutor other than one of the elected constitutional officers responsible for conducting criminal prosecutions—the District Attorney or the Attorney General—or a prosecutor appointed pursuant to County Law § 701.  In contrast, both the special prosecutor and the Attorney General, who has intervened pursuant to Executive Law § 71, rely on this Court's precedent—specifically, *People v Soddano* (86 NY2d 727, 728 [1995]) and *People v Van Sickle* (13 NY2d 61 [1963])—in asserting that the special prosecutor possesses "common-law authority" to bring non-felony prosecutions.

This argument is not without some support.  In *Soddano*, we upheld the prosecution of a speeding ticket by a State Trooper in Town Court, despite the defendant's objection that "only the District Attorney's office could prosecute the case" (86 NY2d at 728).  We explained that County Law § 700 (1)[1] "does not require the District Attorney's personal presence at every criminal hearing in a county, and the prosecution of petty crimes or offenses may be delegated to subordinates and other public or administrative officers and even to private attorneys" (*Soddano*, 86 NY2d at 728).  Specifically, we concluded that, although "District Attorneys . . . retain the ultimate, nondelegable responsibility for

---

[1] As relevant here, County Law § 700 (1) states that, "[e]xcept as provided in section [701] of this chapter, it shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which [the district attorney] shall have been elected or appointed."

prosecuting all crimes and offenses, . . . they may allow appearances by public officers or private attorneys *so long as they are kept aware of all the criminal prosecutions in the county* (*id.* [emphasis added]). The *Soddano* Court relied on our prior decision in *Van Sickle*, in which we upheld the prosecution by the complaining witness of a third-degree assault charge, reasoning that County Law § 700 (1) "does not necessarily mean that the District Attorney or [a] deputy must be physically present at every criminal hearing in the county" (13 NY2d at 62). Rather,

> "it means at least that the District Attorney, as the elected representative of the people and charged with this responsibility [set forth in the statute], must carry the responsibility and *must set up a system whereby [the District Attorney] knows of all the criminal prosecutions in [the] county and either appears therein in person or by assistant or consents to appearance on [the District Attorney's] behalf by other public officers or private attorneys*"

(*id.* at 62-63 [emphasis added]; *see People v Czajka*, 11 NY2d 253, 254 [1962] ["It is no longer open to question that petty crimes or offenses of this nature"—a traffic offense—"may be prosecuted in courts of special sessions by administrative officers and attorneys other than the District Attorney," in that case a Deputy Town Attorney]).

The Court's decision in the instant appeals does not limit or overrule *Soddano* and *Van Sickle*—nor could it inasmuch as the validity of the rule stated in *Soddano* and *Van Sickle* is not before us on these appeals, which do not involve petty offenses—and, thus, it remains an open question whether those cases support the argument of both the special prosecutor and the Attorney General regarding the special prosecutor's "common law" authority to prosecute petty crimes and offenses. Nor does the Court's decision represent

a step back from our statements in *Davidson* that Executive Law § 552 (2) does not

"govern[] proceedings in local courts at all," and our negative answer "to the question

whether Executive Law § 552 (2) (c) prohibits the special prosecutor from prosecuting

abuse and neglect cases in local criminal courts" (27 NY3d at 1086).  Rather, because the

cases before us involve felonies and were prosecuted in superior court, the Court does not

now resolve the question of whether it is perfectly consistent with our prior case law for

local District Attorneys to consent to or "allow appearances by [the Special Prosecutor in

local criminal court] so long as they are kept aware of all the criminal prosecutions in the

county" (*Soddano*, 86 NY2d at 728).  With that limitation in mind, and cognizant that a

more complete resolution of these important, open issues must await another day, I fully

join the Court's decision herein.

RIVERA, J. (concurring in result):

The Court unanimously agrees that Executive Law § 522 would be unconstitutional if interpreted as granting the Special Prosecutor for the Protection of People with Special Needs the authority to prosecute cases independently of the local District Attorney's office.

As I have previously explained, "[t]he legislature may not transfer or diminish the core responsibilities and prosecutorial powers of a constitutionally elected officer, such as a District Attorney, through appointment of an unelected official" (*People v Davidson*, 27 NY3d 1083, 1087 [2016] [Rivera and Abdus-Salaam, JJ., dissenting]). The majority holds the same, and I concur in that part of its analysis (*see* majority op at 1-12).

However, I disagree with the majority's conclusion that an unconstitutional construction is the only reasonable—and, therefore, unavoidable—interpretation of the authority granted in Executive Law § 522. Instead, Executive Law § 552 may be interpreted to allow the Special Prosecutor to appear in criminal matters on consent of the local District Attorney, who would retain "ultimate, nondelegable responsibility" for the prosecution (*see People v Soddano*, 86 NY2d 727, 729 [1995]; *People v Van Sickle*, 13 NY2d 61, 62-63 [1963]). Such an interpretation furthers the legislative purpose and satisfies this Court's obligation to afford statutes a constitutional construction whenever reasonably possible (*see Matter of Lorie C.*, 49 NY2d 161, 171 [1980]).

I.

The statutory provision at issue in this appeal traces its origin to the Special Needs Act of 2012. The impetus for the legislation was a government report finding that there was pervasive physical and sexual abuse of individuals with special needs residing in state facilities. Specifically, the report determined that law enforcement lacked the expertise and resources to adequately investigate and prosecute allegations of abuse in such facilities (*see e.g.* Clarence J. Sundram, Report to Governor Andrew M. Cuomo, *The Measure of a Society: Protection of Vulnerable Persons in Residential Facilities Against Abuse &*

*Neglect* 27 [2012] [noting that, for certain classes of state-run facilities, reports to law enforcement were required "only if the District Attorney of the locality . . . indicated a prior interest in receiving them"]). Faced with this uneven response from law enforcement, the legislature sought to create a "justice center," dedicated to the protection of vulnerable persons, tasked with promulgating "uniform safeguards," including: operating a statewide hotline for the reporting of abuse and neglect of people with special needs; referring reports to law enforcement and, where appropriate, investigating such reports; developing a code of conduct for employees who have regular contact with vulnerable individuals; developing training standards for individuals who investigate allegations of abuse and neglect; and developing policies and procedures for state agencies overseeing services for people with special needs (Sponsor's Mem, Bill Jacket, L 2012, ch 501 at 12).

The legislature also saw fit to create the office of Special Prosecutor and Inspector General, housed within the Justice Center, which would be vested with the broad authority to prosecute offenses involving the abuse and neglect of people with special needs. Critically, though, the legislative history makes clear that the Special Prosecutor was intended to work in tandem with—rather than independently of—the state's existing prosecutors. For example, the history demonstrates that the prosecutorial authority conferred upon the Special Prosecutor would "*bolster* the ability of the state to respond more effectively to abuse and neglect of vulnerable persons" and "*strengthen* and standardize" the existing "safety net for vulnerable persons" (Protection of People with Special Needs Act, L 2012, ch 501, § 2, part A, § 1 [emphasis added]). These legislative goals were to be realized, in part, by permitting the Special Prosecutor "to prosecute,

*concurrently with the District Attorneys*" crimes involving the abuse of individuals with special needs (Sponsor's Mem, Bill Jacket, L. 2012, ch 501 at 12 [emphasis added]). In other words, far from displacing the prosecutorial authority of New York's constitutionally prescribed prosecutorial officers, the legislature intended—as even the Special Prosecutor readily admits—for the Special Prosecutor to *supplement*, rather than supplant, the District Attorney's efforts.

## II.

"[C]ourts must construe statutes so as to preserve their constitutionality whenever possible" (*People v Baumann & Sons Buses, Inc.*, 6 NY3d 404, 408 [2006], citing *People v Epton*, 19 NY2d 496, 505 [1967]; *see also People v Dietze*, 75 NY2d 47, 52 [1989]). The saving construction must be guided by the legislature's *purpose* in enacting the statute (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 92 ["The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature"]). "A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute" (*id.* § 96).

Obviously, in any case where a statute is susceptible of two interpretations—one constitutional and the other not—the text of the statute will necessarily fail to resolve the issue. Indeed, if the plain statutory text itself supplied the constitutional construction, there would be no need to invoke the canon of constitutional avoidance in the first place. Rather, "we cannot presume an intent to pass an unconstitutional act" (*De Camp v Dix*, 159 NY

436, 443-444 [1899]), and, therefore, a "great liberality of construction should be indulged in by the courts to uphold the constitutionality of legislation" (*Johnston v Spicer*, 107 NY 185, 203 [1887]), always in keeping with the statute's "unambiguously articulated legislative purpose" (*Matter of Wood v Irving*, 85 NY2d 138, 245 [1995]; *see also People v Arez*, 64 Misc 2d 723, 725 [App Term, 1st Dept 1970], *affd sub nom People v Gibbs*, 28 NY2d 764 [1971] ["(I)t is well established that a statute must be presumed to be constitutional unless its repugnancy to the constitution clearly appears and every rational and reasonable presumption must first be indulged in favor of the statute"]).

To be sure, this Court may not "rewrit[e]" a statute in order to save it (*Irving*, 85 NY2d at 245), as such an endeavor would amount to a "wholesale revision of the Legislature's enactment, rather than prudent judicial construction" (*Dietze*, 75 NY2d at 52-53). But the majority misconstrues this Court's precedents on this point. Far from proscribing judicial constructions that are not spelled out in the text of the statute (which, again, would render the constitutional avoidance canon a nullity), we have affirmatively adopted interpretations that "we may reasonably find *implicit in the statute*" (*People ex rel Morriale v Branham*, 291 NY 312, 317 [1943] [emphasis added]; *see Dietze*, 75 NY2d at 52-53; *see also Matter of Jamie J. [Michelle E.C.]*, 30 NY3d 275, 284, 286-287 [2017] [applying constitutional avoidance canon notwithstanding an agency's urged "hyperliteral reading" of the Family Court Act, which, while ostensibly based on statutory text, would nonetheless violate the broader statutory scheme as well as certain constitutional rights]; *H. Kauffman & Sons Saddlery Co. v Miller*, 298 NY 38, [1948] [adopting a constitutionally

inoffensive interpretation and rejecting a "strict and literal reading of the statutory language" that "would . . . attribute to the Legislature an intent to accomplish a most . . . unreasonable result . . . startlingly at odds with the whole scheme of the . . . laws"]).[1]

When we *have* declined to adopt a saving construction it is not, as the majority suggests, due to statutory silence or ambiguity, but because such a construction would either directly contradict the statutory text *or* violate the legislature's intent in crafting the statute at issue (*see e.g. People v Smith*, 63 NY2d 41, 79 [1984] [holding that the Attorney General's urged interpretation would be "wholly at odds with the wording of the statute and would require us to rewrite" it]; *Irving*, 85 NY2d at 244-245 ["(C)ourts are not at liberty to save a statute by, in effect, rewriting it in a manner that contravenes its plain wording *as well as its unambiguously articulated legislative purpose*"] [emphasis added];

---

[1] Our recent decision in *Expressions Hair Design v Schneiderman* (32 NY3d 382 [2018]) is illustrative of this point. There, we considered a certified question that required us to interpret a statute, one reading of which arguably violated the parties' First Amendment rights. As the dissent in that case noted, the majority embraced an interpretation of the statute apparently designed to avoid constitutional infirmity (*id.* at 421-422 [Garcia, J, dissenting]). The majority, for its part, claimed that a missing definition must be read into the statute, otherwise the literal reading of the law "would defeat the Legislature's plain intent" (*id.* at 392). That is, the majority adopted a constitutionally unproblematic reading, even though doing so required importing a definition that the dissent argued had been expressly excluded. Although the dissent claimed—as the majority here does today—that "the canon of constitutional avoidance is not a license to disregard statutory text" (*id.*, at 421-422 [Garcia, J., dissenting]), the majority in *Schneiderman* nonetheless prioritized legislative intent over strict textual literalism when construing the statute to save it from unconstitutionality (*see id.* at 391-393 [citing extensively to statute's legislative history in order to determine the legislature's intent, including the Sponsor's Memorandum and a memorandum from Associate Counsel of the Consumer Protection Board]). Today's majority has not explained why that approach to constitutional avoidance has, in the span of less than three years, become bad law.

*see also Scales v United States*, 367 US 203, 211 [1961] ["Although (the U.S. Supreme) Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute"]).

### III.

Here, the saving construction—urged by both the Special Prosecutor and the Attorney General—would violate neither the plain text of the statute nor the legislative purpose. They agree that the unconstitutional delegation of sole prosecutorial authority to the Special Prosecutor may be remedied if the local District Attorney consents to, and maintains ultimate responsibility for, any prosecution carried out by the Special Prosecutor.

As an initial matter, the statute's text is not "wholly at odds with" such a construction, and, thus, the majority's citations to cases like *Smith* are inapposite (63 NY2d at 79). In fact, a number of provisions make clear that Executive Law § 552 is perfectly amenable to the proposed construction. Notwithstanding the Special Prosecutor's argument throughout this litigation, the statute makes clear that the District Attorney retains primacy in any prosecution (as it must, as a matter of constitutional law). Specifically, the statute provides that "nothing herein shall interfere with the ability of district attorneys *at any time* to investigate and prosecute *any suspected abuse or neglect*" (Executive Law § 552 [2] [a] [emphasis added]). Clearly, if the Special Prosecutor *did* have sole authority to initiate a prosecution, that would necessarily "interfere with the ability of district attorneys . . . to . . . prosecute any suspected abuse or neglect" (*id.*); such authority would violate this provision of the statute and, therefore, no proper construction of the statute could tolerate

it (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 144 ["Statutes will not be construed as to render them ineffective"]). Thus, in order to give effect to this provision and to prevent the Special Prosecutor from interfering with the District Attorney's ability to prosecute "any suspected abuse or neglect," the District Attorney must necessarily consent to and retain ultimate responsibility for any such prosecution. This provision, then, not only forecloses the Special Prosecutor's argument that she has sole prosecutorial authority but also undermines the majority's claim that nothing in the statutory text supports the saving construction.

Executive Law § 552 (2) (a) (ii) also supports the proposed saving construction.[2] That provision imposes upon the Special Prosecutor the "duty" to "cooperate with and assist district attorneys . . . in their efforts against . . . abuse or neglect of vulnerable persons" and to "provide technical and other assistance to any district attorney . . .

---

[2] The majority concludes that section 552 (2) (a) (ii) survives constitutional attack. As the majority sees it, the Special Prosecutor lawfully retains the "duty" to cooperate with and assist the District Attorney as granted in this provision because such conduct does not "infring[e] on [the District Attorney's] essential authority" (majority op at 17-18). This is presumably why the majority, in keeping with the procedure we articulated in *Soddano* and *Van Sickle*, finds no constitutional fault with a local District Attorney's delegation to the Special Prosecutor the task of carrying out a prosecution (*id.* at 15 n 5, citing County Law § 700 & *Soddano*, 86 NY2d at 728). This assumes, of course, that the District Attorney retains the authority to determine "whom, whether and how to prosecute" (*id.* at 9, quoting *Matter of Haggerty v Himelein*, 89 NY2d 431, 436 [1997]). Indeed, as the majority acknowledges, that is exactly what our law permits (*see* majority op at 10-11). If a District Attorney may already appoint the Special Prosecutor in certain circumstances, then it is inconceivable that the legislature—intent on ensuring prosecution of crimes against persons with special needs—would have written Executive Law § 522 to supersede the District Attorney's authority. We must assume that the legislature instead sought to endow the Special Prosecutor with the full range of *constitutionally permissible* prosecutorial authority, as expressed in our precedent.

requesting assistance" (*id.*). Given that the legislature's goal in enacting the statute was to ensure a robust prosecutorial response to the abuse of vulnerable New Yorkers, the cooperation and assistance contemplated by this provision undoubtedly extends to prosecutions. Moreover, the fact that the legislature saw fit to describe the assistance owed to the District Attorney as a "duty" suggests the primacy of the District Attorney in these prosecutions—a relationship of the sort imagined by the saving construction at issue here, where the Special Prosecutor may carry out prosecutions only where the District Attorney consents and retains ultimate responsibility.

The majority, in rejecting the saving construction, points to Executive Law § 552's legislative history, where the Special Prosecutor's authority is described as "concurrent" with that of the District Attorney (majority op at 13-14). According to the majority, this demonstrates that the legislature could only have intended to confer *independent* prosecutorial authority. The Special Prosecutor has advanced substantially the same argument. But, for much the same reason that the Special Prosecutor's claim to independent prosecutorial authority fails, so too does the majority's argument. First, the text of section 552 does not describe the Special Prosecutor's authority as concurrent; but, even if it did, "concurrent" authority is not "independent" authority. If, as both the Special Prosecutor and majority suggest, the legislature had intended to commit to the Special Prosecutor sole discretion to prosecute this class of crimes, there would have been no reason for it to expressly prohibit the Special Prosecutor from "interfer[ing] with the ability of district attorneys *at any time* to . . . prosecute *any suspected abuse or neglect*" (Executive Law §

552 [2] [a] [emphasis added]). Nor would the legislature have needed to specify that the Special Prosecutor was a "district attorney" only when "acting pursuant to [the Special Prosecutor's] duties in matters arising under" the Special Needs Act (CPL 1.20 [32])— including, of course, the "duty . . . to *cooperate with and assist district attorneys*" (Executive Law § 552 [2] [a] [ii] [emphasis added]). Other provisions of the statute also evince a legislative desire that the Special Prosecutor occupy a subservient role relative to the local District Attorney (*see e.g.* Executive Law § 552 [2] [b] [requiring the Special Prosecutor to provide the local District Attorney notice of a search warrant application]; *id.* § 552 [2] [c] [requiring the Special Prosecutor to consult with the local District Attorney before any appearance before a grand jury or superior court]). Neither of these provisions would be necessary if, as the majority asserts, the legislature had conferred independent prosecutorial authority on the Special Prosecutor. Instead, these various statutory provisions "provide[] significant limitations on the power of the Special Prosecutor," demonstrating that "the Special Prosecutor is not on equal footing with the local District Attorney" (*Davidson*, 27 NY3d at 1094-1095 [Rivera, J., dissenting]).

Nor does the saving construction violate the statutory purpose. As I have discussed, the legislative history evinces a desire to provide the widest authority possible to the Special Prosecutor in order to ensure a robust prosecutorial response to crimes committed against vulnerable individuals with special needs (*see* discussion of legislative history, *supra* at 2-4). While the Special Prosecutor has argued that this intent confers independent authority to investigate and prosecute abuse and neglect, such an argument is

constitutionally unsupportable. However, the Constitution *does* undoubtedly support very

similar arrangements in other contexts, and a saving construction that interprets Executive

Law § 552 as providing prosecutorial authority co-extensive with that constitutional

maximum in no way undermines the legislature's intent in enacting the statute. As the

majority accurately notes, prosecutorial functions *can* be delegated for a variety of

purposes—so long as an office constitutionally endowed with prosecutorial authority

ultimately remains "responsible for conducting [the] criminal prosecutions" (majority op

at 11; *see also* Executive Law § 63 [2] [permitting the Governor to appoint a special

prosecutor overseen by the Attorney General]; Executive Law § 70-a [permitting a special

prosecutor to exercise prosecutorial authority upon consent of the Governor and District

Attorney]; Judiciary Law § 177-c [granting prosecutorial authority to a special prosecutor

who serves on the staff of one of New York City's five District Attorneys]). These various

legislative schemes demonstrate that prosecutorial functions may be, and frequently are,

delegated to non-constitutional officers, with the important caveat that a constitutionally

recognized prosecutorial officer retains control.[3]

---

[3] The majority erroneously relies on *Matter of Schumer v Holtzman* (60 NY2d 46 [1983]). There, the Court considered a memorandum of understanding, promulgated by a District Attorney, purporting to transfer to an unelected appointee "full authority and responsibility to investigate, to determine whether to prosecute, and to prosecute any person for any offense" arising out of a particular course of conduct (*id.* at 52). As an initial matter, it is not at all clear that *Schumer* even implicates the constitutional avoidance canon, as the memorandum at issue in that case was not a piece of legislation enacted by the People's duly elected representatives and certainly was not itself entitled to a *presumption* of constitutionality (*see LaValle v Hayden*, 98 NY2d 155, 161 [2002]). In any event, unlike Executive Law § 552, the memorandum in *Schumer* was unquestionably an unlawful delegation of authority, as it purported to give the unelected appointee "*full authority . . .*

This principle also finds support in the precedents of this Court (*see e.g. Van Sickle*, 13 NY2d at 62-63 [describing "the District Attorney" "as the elected representative of the people" who has been "charged with (the) responsibility" for overseeing the prosecution of crimes and therefore "must carry the responsibility"]; *Soddano*, 86 NY2d at 728 ["District Attorneys, of course, retain the ultimate, nondelegable responsibility for prosecuting all crimes and offenses"]). This is not, as the majority would have it, true only in the context of prosecutions carried out under County Law § 701; rather, in both *Soddano* and *Van Sickle*, the Court so characterized the general nature of the District Attorney's prosecutorial role, which we then contrasted with narrow exceptions to that rule. Thus, retention of prosecutorial authority by a constitutional officer, even when that authority is delegated, is a constitutional backdrop, against which the legislature is presumed to act (*see Matter of McAneny v Board of Estimate & Apportionment of City of N.Y.*, 232 NY 377, 389 [1922] ["(E)very act of the Legislature is presumed to be in harmony with the Constitution unless the contrary clearly appears"]).

The lack of explicit textual authorization for a saving construction is unsurprising— if such text were present in the statute, no saving construction would be necessary, as we would merely apply the statute as written. Rather, a saving construction becomes impermissible judicial rewriting when it violates either the plain text or legislative intent of a statute. The proposed saving construction here does no such thing. Part IV of the

---

to determine whether to prosecute," thereby stripping a constitutional officer of one of her essential functions, in direct violation of *Wogan* and its progeny (*Schumer*, 60 NY2d at 52 [emphasis added]).

majority opinion, therefore, unquestionably thwarts the legislature's purpose in enacting Executive Law § 552.

## IV.

The question remains whether the District Attorney consented to the respective prosecutions of these defendants by the Special Prosecutor. There is no record evidence of such consent and thus the Special Prosecutor lacked authority to proceed in these criminal matters. Therefore, the courts below properly granted the motions to dismiss the indictments. I would affirm the Appellate Division and uphold Executive Law § 552 in accordance with the constitutionally permissible interpretation I have discussed.

In each case:

Order affirmed. Opinion by Judge Garcia. Judges Stein, Fahey and Wilson concur, Judge Stein in a concurring opinion. Judge Rivera concurs in result in an opinion. Chief Judge DiFiore took no part.

Decided March 30, 2021